273 So.2d 252 (1973)
Gracie M. Tensley VONNER, Plaintiff-Appellant-Applicant,
v.
STATE of Louisiana, Through the DEPARTMENT OF PUBLIC WELFARE, et al., Defendants-Appellees-Respondents.
No. 52299.
Supreme Court of Louisiana.
February 19, 1973.
*253 McKinley, Dimos & Brown, Donald R. Brown, Monroe, for plaintiff-applicant.
Lucas S. Conner, Jr., Baton Rouge, James D. Sparks, Jr., Monroe, for defendants-respondents.
TATE, Justice.
A mother sues for the death of her five-year old son. The child was beaten to death while in the legal custody of the Louisiana Department of Public Welfare. The Department had placed the child in a foster home. The foster mother, Ethel Bradford, beat the child to death. The plaintiff mother sues Mrs. Bradford, her husband, and the State of Louisiana through the Department of Public Welfare.[1]
Both the trial and intermediate courts held the foster mother liable. However, they rejected the demands against the husband, Willie Bradford, and the Department of Public Welfare. 258 So.2d 93 (La.App. 2d Cir. 1972). We granted certiorari, limited to determining the liability of these parties. 261 La. 455, 259 So.2d 911 (1972). (In effect, by so limiting review, we denied certiorari as to the issue of an inadequate award ($4,500) raised by the plaintiff.)

Facts.
The Department of Public Welfare placed three of the Vonner children in the foster home of Willie and Ethel Bradford on July 19, 1968Michael (then age 12), Christopher (age 5), and Johnny (age 4). About a month later, their sister Pamela (age 11) was also placed in this home. The *254 home was in a rural area, the nearest neighbor some distance away.
Until sometime in 1969, the children were happy and well cared for by the Bradfords, without complaint.
Then, Michael and Pamela, the older children, ran away from the Bradford home on three occasions between early June, 1969, and September 29, 1969. On the last occasion, they refused to be returned to the Bradford home and were therefore placed in the detention home in Monroe, leaving only the two little boys, Chris (now 6) and John (now 5) with the Bradfords.
These older children, Michael (now age 13) and Pamela (age 12) complained to the welfare workers of beatings.[2] The welfare workers did not believe the children's story and accepted Mrs. Bradford's explanation that no beatings were involved. Medical examination was never requested. However, on the last occasion, the welfare worker talked with the detention home supervisor, a practical nurse, and found that on the latter's visual observation there were no obvious external marks or bruises on the runaway children.
Some three and one-half months later, on January 14, 1970, Johnny, age 5, died of a severe beating by Mrs. Bradford, the foster mother. The child's body was cut and bruised all over. No welfare visitation had been made following the removal of the older children's clothes in early October, 1969 and this beating death more than three months later. No effort had been made during this time to check on the treatment of the two little boys, 5 and 6, left with the Bradfords, despite the mother's (see below) and the older children's complaints of mistreatment.
Christopher, the 6-year old brother, was removed from the Bradford home the morning following his brother's death. He was examined by a pediatrician, who found the child had suffered multiple injuries over varying times in the past. These, the child explained, had each resulted when his (foster) mother had hit him with a board or stick on various occasions. The child's fractures were also evaluated by a radiologist.
The child's injuries included: a very noticeable tender red swelling of the right arm, which resulted from a healed (and untreated) fracture of the arm more than three months and up to six months old; a fresh weltlike swelling and inflammation across the left shoulder and shoulder-blade; a small bruise and swelling behind the left ear; the scar of a healed injury across the right rib cage; a fairly recent right rib fracture at least 6 weeks to three months old, still healing. The radiologist also pointed out that the fractures could be several months older, since successive beatings could lengthen the healing process and make the fractures appear more recent on the x-rays.
Neither Johnny nor Christopher had ever been examined by a doctor during the nineteen months they had been placed in the Bradford home, despite a department rule requiring medical examination every twelve months of children placed in foster homes.
Further, despite a department rule requiring visitation at least every two months to look after the welfare of the children placed in foster homes, visitations had been sporadic and infrequent in the latter months of 1969. After March 19, 1969, the welfare workers did not visit until June 26, 30 and July 7, and then mostly in connection with the first time the older children ran away. After a visit on August 19th, there were no visits until the second time the children ran away. Following that, another three months elapsed, and once again the welfare visit resulted only from a crisis, this time the beating-death of Johnny.
As noted, the welfare worker had discounted the older children's complaints of beatings, because she thought the children unreliable and that Mrs. Bradford was trustworthy. The worker also remembered *255 complaints by the children's natural mother (the present plaintiff) all during this period that Mrs. Bradford mistreated the children by cursing them and giving them inadequate food and clothes. However, the worker discounted the mother's tales, having found the children well-fed and -clothed on her visits. She denied the mother's testimony that the mother had informed her that the children were beaten; however, the welfare worker also admitted she always considered Mrs. Bradford trustworthy, but the mother unreliable and a troublemaker and therefore discounted her complaints.

1. Liability of the Department of Public Welfare for the Child's Death.

In absolving the Department of liability, the trial and intermediate courts felt that the welfare workers were entitled to disregard the older children's and their mother's complaints of mistreatment by Mrs. Bradford because the welfare workers might reasonably feel that the mother and children were unreliable and because the Department employees found no physical evidence of the beatings complained of upon cursory visual physical examination. The previous courts further felt that the Department's failure to follow its own regulations about periodic welfare visitation and periodic medical examinations was not a proximate cause of Johnny's death, since the evidence did not preponderately prove that the various bruises, fractures, and injuries found on Johnny and Christopher at the time of Johnny's death on January 14, 1970 could have been discovered earlier if the Department had indeed complied with these regulations.
As we will note, the Department's liability rests upon a broader base than negligent compliance with its own regulations for the health and care of children in its custody. Nevertheless, even on this latter basis, the evidence in this record supports recovery against the Department.
The causal relationship between Johnny's death and the Department's breach of its visitation and medical-examination regulations is adequately proved by the evidence as a whole. The extent and duration of the beatings found in January 1970 on Johnny and Christopher, as well as the then-discounted but nevertheless well-founded complaints by the older children of beatings between June and September 29, 1969, prove by a preponderance of the evidencei.e., more probably than not, Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971), Perkins v. Texas and New Orleans Railroad Co., 243 La. 829, 147 So.2d 646 (1962)a continuous course of beatings over an extended period that could and should have been discovered in the conscientious performance of regular visitations and annual medical examinations prescribed by the Department's own regulations.
To meet the burden of proof required in civil cases, the circumstantial evidence need not negate all other possible causes, Naquin v. Marquette Cas. Co., 244 La. 569, 153 So.2d 395 (1963), it need only prove the causal relationship to be more probable than not, Weber v. Fidelity & Cas. Inc. Co., 259 La. 599, 250 So.2d 754 (1971). Further, the breach of duty need not be shown to be the sole cause of the injuries; it is a cause-in-fact of the harm to another if it was a substantial factor in bringing about or not preventing the harm that the duty was intended to protect against. Dixie Drive-It-Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
But we do not view the scope of the Department's liability as limited to that fixed by compliance with its own regulations for the care and health of children entrusted to its custody.
When the Department obtains or accepts the custody of children, it becomes directly responsible for their care and well-being. It cannot insulate itself from this responsibility by contracting it out to others to fulfill. For the reasons to be noted, the Department is vicariously liable for the acts of the foster parents insofar as they breached the duty of the Department (exercised *256 through them) for the child's well-being.
The Department obtained the custody of the Vonner children through the juvenile court after hearing. Under the statutory authority by which this was done, "`Custody' means the control of the actual physical care of the child and includes the right and responsibility to provide for the physical, mental, moral and emotional well-being of the child and all other rights and responsibilities of a parent toward his child except those pertaining to property. * * *" La.R.S. 13:1569(5). (Italics ours.)
The Department chose to fulfill its custodial responsibility by entering into a foster home contract with the Bradfords. This is as authorized by La.R.S. 46:52(8) which permits the Department to "contract with private individuals to hold their homes open for and to care for children in need of temporary or long time foster care * * *." This statute does not authorize the Department to divest itself of the responsibility of custody by such contracts.
Although the Department contracts with foster parents for the board and care of children entrusted to its custody, these foster parents are fulfilling the Department's responsibilities and are acting for it with regard to the care of such children. It is the Department, not the foster parents, who has the legal custody of the child and, consequently, "the right and responsibility to provide for the physical, mental, moral and emotional well-being of the child." La.R.S. 13:1569(5), quoted above.
The Department cannot absolve itself from the results of a failure in the performance of its legal responsibility that the children be adequately fed, clothed, and protected from intentional physical abuse causing serious injury, on the plea that the human instruments the Department has chosen to fulfill the Department's responsibility have failed in their trust. The law does not authorize the Department to delegate its legal responsibility, in these respects at least, to others.
The children of our state are its most precious resource. Those charged with the duty of physical care arising out of the legal custody of a child cannot, on the ground that this duty had been delegated by them to another, evade their civil responsibility for the physical abuse of the child caused by the breach of such duty. Whether the party with legal custody (and thus the ultimate responsibility for the care of the child) chooses to exercise this responsibility of care himself or through an employee, agent, or independent contractor,[3] the ultimate duty of care is non-delegable and remains his legal responsibility.
The Department will therefore be held liable to the plaintiff mother for the death of her son while in the custody of the Department and at the hands of the foster mother through whom the Department was exercising its custodial responsibility.

2. Liability of the Foster Mother's Husband.

The trial and intermediate courts absolved the defendant Willie Bradford, the foster father, from liability because they did not find sufficient proof that he knew of or condoned in the beatings or that Mrs. Bradford was performing any community function while so doing.
The husband Bradford did not testify. The wife Bradford denied any beatings at *257 all. The child Johnny was beaten to death and could not testify. The 6-year old boy Chris, found extensively beaten with fractures and visible signs of beating persisting three to six months before his brother's death, was too young to testify.
We need not, however, rest the husband's liability upon his personal participation in or knowledge of the beatings, although under the evidence we find it unlikely he did not know of the severe beatings producing obvious signs of injury which had taken place under his roof over an extended period of time. Nor need we discuss nor distinguish the Louisiana jurisprudence holding that a husband is not liable for the torts of his wife committed outside his presence, unless she was at the time engaged on a community errand. See, e.g., Martin v. Brown, 240 La. 674, 124 So.2d 904 (1960).
For, in the present situation, the Bradfords each had a duty to care for the child independent of their community property relationship. Both had signed a contract with the welfare department to board and care for the Vonner children at the rate of $50 per child per month (with the Department additionally paying for clothes and medical and miscellaneous expenses).
This was a solidary obligation, by which in return for the consideration they each bound themselves to board and care for the young childrenthat is, both husband and wife were each separately bound to perform the whole of the obligation. Civil Code Articles 2082, 2091.
The wife breached the solidary duty to care for the children, with its implied covenant not to mistreat the children. The husband is solidarily liable with her, at least to the Department (the creditor), for her breach. They are solidarily liable for the whole of the damages as are the immediate and direct consequence of that breach. Civil Code Article 1934(2), (3).
The husband and the wife are thus each responsible to the Department for the whole of the damages resulting to it because of their breach which resulted in the death of the child; the Department is liable for the same such damages to the plaintiff mother. We see no reason why the plaintiff mother, the creditor of the Department, cannot exercise her debtor's (the Department's) cause of action and sue the husband directly on it, thus avoiding a circuity of action.[4]
We thus find it unnecessary to discuss whether the duty of physical care of children is non-delegable even without legal custody, or whether the husband is additionally responsible for the wife's malfeasance in the performance of a community obligation because he is head and master of the community. Civil Code Article 2404.
For the reasons stated, we find the defendant husband, Willie Bradford, solidarily liable with his wife and with the Department to the plaintiff mother.

Conclusion.
The amount of the award, $4,500, is no longer an issue, since certiorari was denied as to this issue.
Accordingly, the judgments of the trial and intermediate courts are amended so as to hold the defendants Willie Bradford and the State of Louisiana through the Department of Public Welfare liable in solido with the defendant Ethel C. Bradford unto the plaintiff Gracie M. Tensley Vonner for the full amount of the award, legal interest thereupon, and the costs of these proceedings *258 in the trial court. The defendants Willie Bradford and the State of Louisiana through the Department of Public Welfare are taxed with the costs of appellate review, including the proceedings in this court. The State of Louisiana through the Department of Public Welfare is cast only with such costs as are taxable to it by law.
Judgments of Court of Appeal and of trial court amended so as to hold additional parties solidarily liable.
DIXON, J., concurs in the result, being of the opinion that the husband is liable as head and master of the community in this community endeavor.
BARHAM, Justice (concurring in the result).
Both defendants are liable for the damages claimed under the application of Civil Code Article 2320: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." (Emphasis supplied.) See Comment, 33 La.L.Rev. 110 (1972).
NOTES
[1] Any inmunity of the State from suit was waived by House Concurrent Resolution No. 271, July 8, 1970, of the Legislature of 1970.
[2] The welfare workers only remembered complaints of beating of the girl, Pamela.
[3] We thus find it unnecessary to determine whether the foster parents were servants of the Department, as the plaintiff argues, or independent contractors, as the Department argues. Further, as Prosser notes concerning the liability of an employer for the negligence of an independent contractor on the ground that the duty imposed on the employer cannot be delegated, "It is difficult to suggest any criterion by which the non-delegable character of such duties may be determined, other than the conclusion of the courts that the responsibility is so important to the community that the employer should not be permitted to transfer it to another." Prosser on Torts, Section 71, p. 471 (4th ed. 1971).
[4] See Belcher & Creswell v. Johnson, 114 La. 640, 38 So. 481 (1905): "The creditor can exercise all the rights of his debtor, except those exclusively personal." Article 661, p. 272, of the 1808 Civil Code provided that "a creditor may exercise all the rights and actions of his debtor, except such as are exclusively attached to whole of the damages as are the immediate and direct consequence of that breach. Civil Code Article 1934(2), (3). the person." This provision was not reenacted in the 1825 codification as not necessary, since obvious. See 1 Louisiana Legal Archives, Project of the Civil Code of 1825, 263 (1937). See Yiannopoulos, Civil Law of Property, Sec. 78, p. 229, f.n. 117 (1966).