CHEHARDY, Judge.
The issue before us on this appeal is whether the appellant presented sufficient proof that the decedent, John T. Hodges, Jr., converted the assets of their mother’s estate to his own use.
John T. Hodges, Jr., died on July 15, 1982. His son, Turner W. Hodges, opened his succession on July 27, 1982 and was appointed administrator. The only assets of the succession were three bank accounts — a checking account and two savings accounts — with a total value of $60,-551.98.
On September 13, 1982, Daniel L. Hodges filed a motion to traverse the descriptive list and a petition for declaratory judgment *1215 in the succession proceedings. He stated he was the provisional administrator of the succession of Alice Campbell Hodges White, and that John T. Hodges was the son of Alice Campbell Hodges White and the brother of petitioner, Daniel L. Hodges. He alleged that upon the death of Alice White on December 11, 1975, John T. Hodges had converted her assets to his own use, and that the cash and accrued interest thereon, claimed by Turner W. Hodges as assets of John T. Hodges’ succession, in fact are assets of the succession of Alice White. Daniel Hodges sought a declaratory judgment returning all the cash to the succession of Alice Campbell Hodges White for proper distribution therein. He alleged, alternatively, that if the cash were determined to be a donation by Alice White to John Hodges the donation should be declared an impingement on the legitime of her other children, Daniel L. Hodges, Frank C. Hodges and Robert B. Hodges, and should be reduced to the disposable portion.
Daniel Hodges’ claim was tried on the merits on November 9, 1982. On January 14, 1983, the district court rendered judgment dismissing Daniel Hodges’ motion to traverse and his petition for declaratory judgment. Daniel Hodges has appealed.
In his reasons for judgment, the trial judge concluded that Daniel Hodges had failed to present sufficient evidence that the assets in the possession of John Hodges at the time of his death had belonged to Alice White. Further, the judge stated, even if he were to conclude Mrs. White had donated funds to John Hodges, he was unable to determine the amount or the form of the donation, and so could not consider the claim for reduction.
Daniel Hodges’ major contention is that, because his brother’s only known source of income was a Veteran’s Administration disability pension, it would have been impossible for John Hodges to have accumulated the sums of money found in his accounts at his death. Appellant contends the greater part of these funds was money belonging to their mother, the residue of funds she received from the sale of her house several years before she died.
Daniel Hodges’ evidence in support of his claim consisted of his own testimony and voluminous bank records, primarily records of John Hodges’ banking transactions. (Because of the length of time since Mrs. White’s death, appellant was unable to obtain complete records of Mrs. White’s transactions from the banks.) Despite all his efforts, however, appellant’s case turns on circumstantial evidence.
The documentary evidence establishes that Mrs. White sold her house in 1971 for $20,000, of which she probably received about $12,000 after paying the mortgage balance; that she converted her bank accounts to joint accounts, with John as co-owner, in 1972; that these joint accounts were closed on December 19, 1975, eight days after Mrs. White’s death; that John opened five bank accounts, totaling $16,-268.46, in his own name about five months after his mother died.
Further, appellant established that $117.92 of the money used to open one of these accounts came from Medicare checks, issued after Alice White’s death, on which she was the named payee. The rest of the initial deposit in that particular account consisted of Veterans Administration checks to John Hodges. The initial deposits in three other accounts opened that day were in cash, totaling $10,050; the last account was opened with a deposit of $4,000, but the evidence does not establish whether this was in cash or by check.
Daniel Hodges testified that his brother John’s only source of income was his Veterans Administration pension, that John was not a frugal man, that he was an exceptionally heavy drinker, that “wine, women and song ... was the pattern of his life.” Appellant stated further that while John was living with their mother, she more or less put up the expenses. On the other hand, after their mother sold her house and moved with John to an apartment, Daniel testified, John paid the apartment rent. He could not establish positively which one customarily paid for food, although he said *1216 his wife had seen his mother write a check for groceries a couple of times. He felt his brother John’s financial condition would “definitely not” have enabled him to amass savings of some $60,000 by the time of his death.
Reducing his testimony to its bare bones, appellant’s arguments are, first, that the greater part of the money in John Hodges’ accounts must have been money obtained from their mother’s accounts after her death, or alternatively, that John used their mother’s money for living expenses, enabling him to hoard his Veterans Administration income, thus accumulating the large savings he had by the time he died.
Appellant was unable, however, to establish how much money was in Mrs. White’s bank accounts at the time of her death. Nor was he able to establish what she did with the lump sum she received from the sale of her house — his testimony was, “Only thing she could do was to bank it.” He offered no positive testimony as to what her living expenses may have been, or as to whether she had any other source of income.
Similarly, he was unable to establish the source of the money used to open the five bank accounts after Mrs. White’s death; he can only infer from the circumstances that the money was his mother’s. Although he would have the court believe, from his testimony, that his brother was a wastrel who never saved a dime, he cannot offer us real proof. John Hodges received a pension from, apparently, World War II until his death — a period of more than forty years. Apart from Daniel Hodges’ vague testimony as to his brother’s lifestyle, there is nothing to refute the presumption that John Hodges saved a considerable amount of money in all those years. *
Daniel Hodges also introduced into evidence — over objection by counsel for appel-lee, Turner Hodges — an unsigned carbon copy of a purported will by John Hodges, on which was scribbled in pencil, over a paragraph bequeathing to Turner Hodges his legitime of John Hodges’ estate, the following: “What estate? A bunch of wsky botles [sic]? Not my money”. Appellant identified the scribbles as being in his brother John’s handwriting. On appeal, Daniel Hodges cites this document as evidence that John Hodges had disclaimed having any money of his own. We find this argument without merit. Not only are we dealing with an unsigned document, but also with phrases that can be interpreted in more than one way.
Turner Hodges, John Hodges’ son and succession representative, offers in his brief the theory — by implication — that John Hodges may have kept his money in his mother’s bank accounts to prevent its being seized to satisfy a large judgment outstanding against him. Turner Hodges also points out that the bank records placed in evidence by Daniel Hodges clearly establish that, within the last 2½ years of his life, John Hodges was able to save almost $16,000 in accumulated unspent pension checks. As Turner Hodges says, it is not unlikely that John Hodges could have saved $10,000 in cash in the period between World War II and May 10, 1976, when he opened the two banking accounts for $5,000 each in cash.
While circumstantial evidence alone can constitute the required preponderance of evidence in a civil case, the test of its sufficiency is whether, taken as a whole, such proof shows that the fact to be proved is more probable than not. Klumpp v. Colonial Pipeline Co., 389 So.2d 457 (La. App. 3 Cir.1980); Campbell v. Mouton, 373 So.2d 237 (La.App. 3 Cir.1979); Vonner v. State Department of Public Welfare, 273 So.2d 252 (La.1973); Jordan v. Travelers Insurance Company, 245 So.2d 151 (La.1971). A case based on circumstantial evidence must fail unless the circumstances lead to the exclusion of other reasonable hypotheses with a fair amount of certainty. Maryland Cas. Co. v. Trahan, 384 So.2d 819 (La.App. 4 Cir.1980).
“* * * Proof which establishes only possibility, speculation, or unsupported probability does not suffice to establish a claim. * * * Mere proof that something is possible is of little probative *1217 value as to ari ultímate issue of fact, unless it is established with reasonable certainty that all other alternatives are impossible. * * *” IMC Exploration Co. v. Henderson, 419 So.2d 490, 509 (La.App. 2 Cir.1982).
Daniel Hodges’ evidence established that $117.92 of money that properly belonged to the succession of Alice Campbell Hodges White was deposited by John Hodges to a bank account in his name. Except for that item, appellant’s evidence fails to exclude other reasonable alternatives as to the source of John Hodges’ savings.
Accordingly, we conclude the trial judge erred in dismissing Daniel Hodges’ demand only insofar as the sum of $117.92 should have been found to be an asset of Alice White’s estate. Further, because a suit for conversion is an action ex delicto, the successful party is entitled to interest from date of judicial demand on the amount awarded. LSA-R.S. 13:4203. In all other respects, the district court’s judgment was correct.
Judgment is hereby rendered in favor of Daniel L. Hodges, in his capacity as provisional administrator of the Succession of Alice Campbell Hodges White, and against Turner W. Hodges, in his capacity as administrator of the Succession of John T. Hodges, Jr., in the amount of ONE HUNDRED SEVENTEEN AND 92/100 DOLLARS ($117.92), plus interest from date of judicial demand, and for all costs of these proceedings. As provisional administrator of the Succession of Alice Campbell Hodges White, Daniel L. Hodges is ordered to include the amounts thus awarded among the assets of that succession for proper distribution according to law.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.