NORRIS, Judge.
In this worker’s compensation proceeding seeking death benefits, penalties and attorney’s fees, Betty Ford and her minor children appeal the granting of defendant’s motion to dismiss at the close of plaintiff’s case at trial.
This proceeding was instituted on September 2, 1981 by Frager Ford and Betty Ford, the father and mother of the deceased minor child Michael Ford, against Plain Dealing Charcoal Co., Inc., its insurer; Arkansas Charcoal Co., Inc., its insurer; Arrow Industries, Inc., d/b/a Campfire Charcoal Co., Inc., and its insurer for worker’s compensation benefits allegedly owed as a result of the death of Michael on September 6, 1979. Michael’s death occurred when he was backed over by a truck owned by Plain Dealing Charcoal Co., Inc., and driven by Frager Ford, its employee, while unloading unfinished materials utilized in the manufacture of charcoal at the Plain Dealing Charcoal plant in Plain Dealing.
A prior suit had been instituted by Mr. and Mrs. Ford against Campfire Charcoal Company, Inc., seeking the identical relief sought herein. It was dismissed with prejudice after testimony adduced at trial revealed that neither Frager Ford nor Michael Ford was an employee of Campfire Charcoal at the time of Michael’s death. The dismissal of that suit was affirmed by this court in an unpublished opinion.
Earlier in this proceeding, all defendants filed exceptions of prescription and defendant Campfire Charcoal filed an exception of res judicata. All of these exceptions were sustained by the trial court and this proceeding was dismissed. The Fords appealed that judgment and this court affirmed the sustaining of the exception of res judi-cata and the exceptions of prescription filed by all defendants with the exception of Plain Dealing Charcoal. That portion of the judgment was reversed and the matter returned to the district court for further proceedings. See Ford v. Plain Dealing Charcoal Co., Inc., 419 So.2d 120 (La.App. 2d Cir.1982).
Thereafter, trial on the merits commenced. At the close of the plaintiff’s case, Plain Dealing Charcoal filed a motion *132 to dismiss pursuant to La.C.C.P. Art. 1810 alleging that there had been a failure to produce any evidence to support the contention that Michael was employed by Plain Dealing Charcoal at the time of his death and that there had been a failure to prove the dependency of the Fords upon Michael for support, both elements being essential to the proof of the Fords’ case.
The Fords’ evidence can be summarized as follows:
Earl Riley, a supervisor at Plain Dealing Charcoal, testified that he hired Frager Ford, Sr. as a truck driver at the Plain Dealing plant to haul “slabs,” an unfinished product used to make charcoal, in June, 1979. Riley testified he informed Ford at that time that riders were not allowed in company trucks and that he could not hire helpers to assist him in loading and unloading the slabs. He distinguished the employees who were hired to haul slabs from those who were hired to haul finished products, i.e., charcoal, because the company allowed charcoal haulers to hire additional help to load and unload. Riley admitted that he had observed Ford and his sons on one occasion at the Plain Dealing plant loading and unloading slabs and that he had notified the actual plant manager to inform Ford that his sons were not allowed to engage in those activities or to be on the trucks. Riley further testified that he was not aware that Ford had “hired” his sons to assist him. He reiterated that company policy did not allow employees to hire help to load and unload slabs and that the only person whom he ever observed utilizing help for this purpose was Ford. Riley stated that he had never consented to allow Michael to work for the company, that Michael was never subject to his control, that he never gave Ford permission either for his sons to work with him or to ride in the company truck, and that he expressly informed Ford when he was hired in June that he could not use helpers to assist him with his work.
The Fords called a number of other witnesses who had been employees with the defendant company at the time. In essence, they stated that they knew Frager, Sr. and that they had seen him being assisted by his sons on the truck, with varying degrees of frequency. They all emphasized that they themselves had never secured help to load or unload slabs, but they denied ever having received any specific instructions not to do so. One of them said the plant supervisor and manager had observed Ford’s operation and had taken no action.
Betty Ford, the widow of Frager Ford, Sr., and Frager Lee Ford, Jr. testified at trial on both the employment and dependency issues. Because Frager Ford, Sr. died of unrelated causes prior to trial on the merits, his deposition was introduced in lieu of his testimony. In substance, the family members’ testimony was as follows: Frager Ford, Sr. was employed by Plain Dealing Charcoal as a truck driver to haul slabs with related duties, which sometimes included loading and unloading the slabs. All of the expenses incidental to operating the truck he used were paid directly by Plain Dealing and he was compensated by the mile and by the load. His employment with the company commenced in June, 1979. At the time of Michael’s death, Michael was 14 years of age and Frager, Jr. was 10 years old. Michael and Frager, Jr. did assist Frager, Sr. in loading and unloading slabs from his truck; each week Frag-er, Sr. would cash his check, pay his two sons $40 each in cash; the two boys would give the $40 to their mother who would then return $10 apiece to them for spending money and the remaining $30 would be commingled with the money Mrs. Ford received from Frager, Sr. and used by her to meet the entire needs of the family. No one outside of the immediate Ford family knew about this arrangement. Neither of the boys received money from Plain Dealing Charcoal for any alleged activities engaged in connection with working with their father. No checks or receipts for either the money received from the minors or by them exist. Frager, Sr. did not withhold social security for his sons, he made $7416 from June 26, 1979 to the end of 1979, and he claimed both Michael and *133 Frager, Jr. as dependents on his 1979 state and federal income tax returns.
The testimony of Frager, Sr. and his son Frager, Jr., reveals that on September 6, 1979, Frager, Sr. picked up his sons at home and took them with him to pick up a load in Arkansas. With their help, Ford loaded the truck at an Arkansas mill and brought it back to the Plain Dealing plant. While backing up to unload 4 x 4’s at the plant he heard one of the boys scream. When he stopped the truck and got out, Ford discovered that Michael had been crushed to death by the truck.
In oral reasons, the trial court stated:
* * ⅜ —[i] don’t believe there’s been any showing that there was any direct employee-employer relationship and the only way that the Court could find any relationship would be whether or not its statutory employ, [sic] * ⅛! [Statutory employees are employees who do the same type of work that other employees that are hired by the company do. In this particular case, Mr. Ford and the other drivers were required to load and unload and was paid for that service. For that reason, these young boys could be statutory employees under the law as I appreciate it, especially with the knowledge — may have not been direct or specific consent of the employer, but with at least the tacit consent because there has been no showing that anyone ever told him that they could not be with him in the truck. " ⅜ * [A]nd for the purposes of this motion, I’m going to consider that Michael Ford was a statutory employee and that his parents would have been entitled, or would be entitled to recover if the dependency could be shown. ⅛ ⅞ s I don’t, however, believe in this particular case that any dependency has been shown. I think the dependency shown is that the children depended on their father and mother for everything that they had and — changing money from one hand, and to be honest with you, I don’t believe that there was ever this exchange of money that the Fords testified to — giving $4-0.00 to their mother and getting $10.00 back is — is a ludicrous situation — I don’t believe that that occurred.... I don’t believe there has been showing of dependency * * *. [Emphasis supplied.]
Therefore, the trial court granted the motion to dismiss resulting in this appeal, which assigns as error the granting of the motion to dismiss based on the factual findings that (1) the plaintiffs had failed to prove an employer-employee relationship between Michael Ford and Plain Dealing Charcoal and (2) the plaintiffs had failed to prove dependency.
First, we note that the trial court did not expressly find that the Fords had failed to prove an employer-employee relationship between Michael and Plain Dealing Charcoal. Rather, it concluded there was insufficient evidence to prove a direct employer-employee relationship, and seemed to concede that there was statutory employee relationship for purposes of the motion to dismiss. Thus, the trial court’s judgment was based on whether or not the Fords had proven the requisite dependency under La. R.S. 23:1252.
For the purpose of this opinion, we will pretermit any discussion of the correctness of the trial court’s approach to the employer-employee relationship. The only issue presented by this appeal is whether the plaintiffs who claimed death benefits proved the requisite dependency necessary for them to prevail. Finding that the trial court was not in error in this regard, we affirm its holding.
La.R.S. 23:1251 provides:
The following persons shall be conclusively presumed to be wholly and actually dependent upon the deceased employee:
(1) A surviving spouse upon a deceased spouse with whom he or she is living at the time of the accident or death.
(2) A child under the age of eighteen years (or over eighteen years of age, if physically or mentally incapacitated from earning) upon the parent with *134 whom he is living at the time of the injury of the parent, or until the age of twenty-three if enrolled and attending as a full-time student in any accredited educational institution.
Clearly, the Fords do not fall within the ambit of this statute. Accordingly, in order for them to recover, their proof must show that they are entitled to recover under La.R.S. 23:1252 which provides:
In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death; in such other cases if there are a sufficient number of persons wholly dependent to take up the maximum compensation, the death benefit shall be divided equally among them, and persons partially dependent, if any, shall receive no part thereof.
In considering the effects of this statute, the court in Hurks v. Bossier, 367 So.2d 309, 310 (La.1979), stated:
Dependency is discussed in The Law of Workmen’s Compensation by Arthur Larson, Matthew Bender, Volume 2, 1976, § 63.11:
The general test of dependency may be stated as follows: A showing of actual dependency does not require proof that, without decedent’s contributions, claimant would have lacked the necessities of life, but only that decedent’s contributions were relied on by claimant to maintain claimant’s accustomed mode of living.
It follows that there can be no absolute dollar standard by which to test either the magnitude of claimant’s need or the magnitude of decedent’s help in meeting that need. What counts is the relation between the two. So, although ordinarily the receipt of only $65 could scarcely be expected to establish dependency, dependency was indeed found in a case involving a claimant who was living in extreme poverty with virtually no income.
As for partial dependency, the standard is stated in Larson’s work at § 63.12:
Partial dependency may be found when, although the claimant may have other substantial sources of support from his own work, from property, .or from other persons on whom claimant is also dependent, the contributions made by the decedent were looked to by the claimant for the maintenance of his accustomed standard of living.
Further discussion of this issue is found in Durbin v. Argonaut Insurance Company, 393 So.2d 385, 387 (La.App. 1st Cir.1980):
In 14 Louisiana Civil Law Treatise, Workers’ Compensation, Section 309 (West, 2nd Ed. 1980), Professors Wex Malone and H. Alston Johnston, III, comment that:
... in all cases (except where the dependency of the spouse and child is conclusively presumed), the claimant must prove dependency by establishing both a need for support and also the fact that contributions to his support were actually made by the deceased during the latter’s lifetime.

Thus, it is commonly held that neither need for support nor the existence of a moral or legal obligation to support is sufficient proof of dependency if there is not showing that the deceased in fact contributed to the claimant’s support.

The dependency must have existed at the time of the accident and death. Proof of prior dependency is not sufficient, and contributions made by the deceased to a partial dependent more than a year before the death cannot be included in determining the amount of compensation to which a partial dependent is entitled. [Emphasis supplied.]
Thus, under the applicable jurisprudence, the fact of dependency in worker’s *135 compensation claims of this nature is proved by evidence that the deceased employee made actual contributions to the support of the claimant. Moore v. Millers Mutual Fire Insurance Company of Texas, 406 So.2d 708 (La.App. 2d Cir.1981). The only evidence in the instant case to the effect that Michael made actual contributions to the support of the claimants was the self-serving testimony of Mr. and Mrs. Ford and that of their son, Frager, Jr. The trial court totally rejected their testimony about this most unusual financial arrangement between these parents and their two minor sons as incredible when it found that there was never an exchange of money from Michael to Mrs. Ford. Not only was Michael not providing any money for the support of the family but in fact he was being wholly supported by his father. This credibility finding under the circumstances of this case is within the province of the trial court and is supported by the record which is devoid of any written corroboration on this essential point and which includes the income tax forms filed by the Fords in 1979 showing both Michael and Frager, Jr. as dependents.
This case was decided on a motion for judgment of dismissal under La.C.C.P. Art. 1810(B). In considering such a motion the trial judge must weigh and evaluate all the evidence presented up to that point and must grant the dismissal if he finds the plaintiff has not established proof by a preponderance of the evidence of the facts essential to relief. The trial judge has much discretion in determining whether or not to grant a motion for judgment of dismissal. In Re H, 437 So.2d 895 (La.App. 2d Cir.1983).
Accordingly, we conclude that under the facts of this case the trial court did not err in granting the motion to dismiss because the Fords have failed to prove dependency by a preponderance of credible evidence and they are not entitled to the relief sought.
For the foregoing reasons, the judgment of the trial court granting the motion to dismiss is affirmed at the cost of appellants.
JUDGMENT AFFIRMED.