546 So.2d 279 (1989)
Huey P. GOODEN, Plaintiff-Appellant,
v.
STATE of Louisiana, DEPT. OF HEALTH & HUMAN RESOURCES, et al, Defendants-Appellees.
No. 88-324.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
Charles Seaman, Lisa C. McCowen, Natchitoches, for plaintiff-appellant.
Watson, Murchison, Ronald E. Corkern, Laura Johnson, Natchitoches, Gold, Weems, etc (Sam N. Poole, Jr.), Alexandria, for defendants-appellees.
Before GUIDRY, FORET and DOUCET, JJ.
FORET, Judge.
This is a personal injury action filed by Huey P. Gooden[1] on behalf of his minor child, Paul Gooden, against the State of Louisiana, Through the Department of Health & Human Resources (DHHR); its insurer, National Union Fire Insurance Company of Pittsburg, Pennsylvania (National Union); Natchitoches Parish School Board; and Curtis Evans. DHHR filed a third party demand against the Natchitoches Parish School Board. At the close of the plaintiff's case, DHHR and the Natchitoches Parish School Board moved for a directed verdict. The trial court granted this motion and plaintiff has appealed.[2]

FACTS
During the 1984-85 school year, Paul Gooden and Curtis Evans were students at the Natchitoches Parish Career Center, a school for mild to moderately retarded children. *280 At that time, the Natchitoches Parish Career Center had approximately one hundred students and was staffed by teachers certified in special education. On January 29, 1985, shortly after the 2:40 bell, Paul Gooden was walking toward his bus when suddenly Curtis Evans approached him and pulled on his arm. When Paul turned to look in Curtis' direction, he was struck in the jaw by Curtis, who then immediately walked away from the scene. Upon arriving at his home that evening, Paul began to experience pain in the area of the jawbone, and it was subsequently determined by Dr. James Batte that he had sustained a nondisplaced fracture of the right mandibular angle necessitating surgery and subsequent outpatient treatment.
In rendering judgment in favor of defendants, the trial court found that there was no evidence of any negligence, inattention, or lack of supervision by the teachers and staff at the Natchitoches Parish Career Center; that the incident in question was of a sudden and unforeseeable nature and therefore unavoidable; and that DHHR was not strictly liable for the acts of foster children such as Curtis Evans, who are assigned to its custody. Accordingly, judgment was rendered in favor of all defendants herein with the exception of Curtis Evans, who, as previously stated, was cast in judgment for general and special damages incurred by plaintiff.
On appeal, plaintiff assigns the following errors:
1. The trial court erred in granting a directed verdict in favor of DHHR and its insurer, National Union,
2. The trial court erred in finding that DHHR and its insurer are not vicariously liable[3] for the tortious acts of Curtis Evans.
3. The trial court erred in granting a directed verdict in favor of the Natchitoches Parish School Board, and
4. The trial court erred in failing to find that the Natchitoches Parish School Board, through its employees, failed to provide adequate supervision to protect Paul Gooden from the harm imposed by Curtis Evans.
For the reasons hereinafter assigned, we affirm the judgment of the trial court dismissing plaintiff's action against defendants, DHHR, National Union, and the Natchitoches Parish School Board.

ASSIGNMENTS OF ERROR NOS. 1 & 2
In considering a motion for directed verdict pursuant to C.C.P. art. 1810, the trial court must weigh and evaluate all evidence presented to that point and must grant the dismissal if it finds that the plaintiff has failed to prove, by a preponderance of the evidence, the facts essential to relief. Ford v. Plain Dealing Charcoal Co., Inc., 457 So.2d 130 (La.App. 2 Cir.1984). In the instant case, the record is devoid of any evidence tending to establish negligence on behalf of DHHR and/or its employees. However, plaintiff contends that DHHR is strictly liable for the acts of minor children such as Curtis Evans who are assigned to its custody as foster children. In support thereof, plaintiff cites Vonner v. State Dept. of Pub. Welfare, 273 So.2d 252 (La. 1973). We have reviewed this case and find the facts of Vonner to be clearly distinguishable in that Vonner involved the question of whether or not the State was responsible for the acts of a foster parent who physically abused and, in fact, beat to death, a child assigned to her care. In the instant case, we are not confronted with this issue but are, instead, presented with the issue of whether or not the State (DHHR) is responsible for a tortious act committed by the foster child himself. We find, in accordance with the hereinafter cited statutes and jurisprudence, that no such liability exists.
Art. 2317 of the La.Civil Code states as follows:
"Art. 2317. We are responsible, not only for the damage occasioned by our *281 own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
One of the modifications referred to in Art. 2317 is provided for in Art. 2318, which states:
"Art. 2318. Acts of minors
The father and the mother and, after the decease of either, the surviving parent, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
The same responsibility attaches to the tutors of minors.
Amended by Acts 1984, No. 578, § 1."
In Opelousas Scrap v. Foster Homes Program, 525 So.2d 1144 (La.App. 3 Cir.1988), we were confronted with this same issue, i.e., whether or not DHHR is strictly liable for the tortious acts of children assigned to its custody. In finding that strict liability does not exist in such instance, we stated the following:
"Liability pursuant to article 2318 extends only to `fathers' `mothers', and `tutors' and then only for the acts of `their' minor or unemancipated children residing with them or placed by them in the care of another. We do not believe that the State, even though it had `legal custody' of the minors, or Beadle, who was the `foster' parent and possessed physical custody, may be held strictly liable. La. R.S. 13:1569(11) (1950) (amended 1972); La.R.S. 46:51(8) (1950) (amended 1978); Smith v. State, Division of Family Services, Department of Health and Human Resources, 452 So.2d 388 (La.App. 3rd Cir.1984).
"Neither the salient language of art. 2318 nor the theory underlying its enactment suggests that either the State or a foster parent may be found strictly liable for the acts of minor foster children. The State and foster parents ordinarily lack the opportunity to nurture and direct the lives of foster children in the same respect a parent or tutor may."
Cf. Brady v. State Health & Human Res. Admin., 525 So.2d 102 (La.App. 3 Cir.1988), writ den., 525 So.2d 1046 (La.1988). In accordance with the above cited case, DHHR is not strictly liable for the tortious acts of Curtis Evans. We affirm the decision of the trial court granting a directed verdict in favor of DHHR and its insurer, National Union.

ASSIGNMENTS OF ERROR NOS. 3 & 4
Plaintiff also contends that the Natchitoches Parish School Board, through its employees, was negligent in its failure to adequately supervise the bus loading procedures at the Natchitoches Parish Career Center, and that such failure resulted in the injuries sustained by plaintiff in this case. Again, we respectfully disagree. The overwhelming evidence presented at trial indicates, as found by our learned brother, below, that the incident in question was of a sudden and unforeseeable nature and therefore unavoidable. To begin with, it was established at trial that there was no reason to anticipate any trouble between the plaintiff and Curtis Evans. In fact, plaintiff admitted at trial that he and Curtis Evans had been friends and had never had any prior trouble. As to Curtis' alleged belligerent behavior, the record indicates that in the past, he had caused classroom disturbances but there was no evidence of his ever having done anything of a violent nature. In fact, the school's principal, Herbert Baptiste, testified that, to his knowledge, Curtis had never been suspended from school for any reason prior to the incident in question. He also stated that during his tenure as principal of the school nothing of this nature had ever occurred while the children were waiting to board their buses.
As for the supervision provided by the Natchitoches Parish Career Center while the children were boarding the buses, Mr. Baptiste testified that four teachers or teacher's aides were assigned bus duty although it is possible that, on the date of the incident in question, one of the teachers may not have arrived for bus duty until *282 after the altercation occurred. However, it was also established that some of the other teachers, who were not on bus duty, remained outside in the bus loading area until the second bell rang at 3:00 P.M. As for the opportunity to avoid the altercation and resulting injuries, Jackie Page, who was a teacher's aide assigned bus duty on the date in question, testified that she was standing within arm's length of the plaintiff when he was struck by Curtis Evans. Despite being that close to plaintiff and defendant, she was unable to prevent the altercation, which consisted of only one blow struck by Curtis Evans. Additionally, one of the bus drivers, Janice Martin, testified that plaintiff rode her bus on a regular basis and that the incident in question occurred just a few feet away from the door of her bus. She further testified that she was sitting behind the wheel of her bus and was therefore close to both plaintiff and defendant when the incident took place. According to Ms. Martin, the altercation happened so quickly that she didn't realize what was going on. She stated that she didn't even have time to "holler" to the boys or do anything else to prevent the incident from taking place. She further stated that she could not have prevented the altercation even if she had been standing on the steps of her bus.
Therefore, we find that the incident in question occurred suddenly and was both unforeseeable and unavoidable. It is well established that spontaneous acts of a sudden and unpredictable nature do not create liability on behalf of the School Board or its employees. Nicolosi v. Livingston Parish School Board, 441 So.2d 1261 (La.App. 1 Cir.1983). Accordingly, we find that the trial court was correct in holding that the Natchitoches Parish School Board was not liable for the injuries sustained by plaintiff.
The judgment of the trial court is affirmed, and all costs of this appeal are assessed to plaintiff-appellant, Paul Gooden.
AFFIRMED.
NOTES
[1] Since the filing of the original petition, Paul Gooden reached the age of majority and was substituted as plaintiff herein.
[2] Curtis Evans was cast in judgment for general and special damages totalling $15,145.48. He has not appealed, and the judgment against him is therefore final.
[3] Plaintiff uses the term "vicarious liability" in its assignment of error. In fact, we are dealing here with the issue of whether or not DHHR is strictly liable for the actions of Curtis Evans. Hereinafter, we shall therefore discuss this assignment of error in terms of strict liability rather than vicarious liability.