838 So.2d 761 (2003)
Charlene MILLER, Individually and on behalf of her minor children,
v.
Matthew & Shirley MARTIN, Department of Social Services, State of Louisiana and Methodist Home for Children.
No. 2002-CC-0670.
Supreme Court of Louisiana.
January 28, 2003.
Rehearing Denied March 21, 2003.
*762 David R. Fine, Donata T. Boutte, Richard L. Ducote, New Orleans, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, M. Chadwick Pellerin, New Orleans, Stephen F. Babin, Baton Rouge, Matthew Martin, William J. Sommers, Jr., James R. Sutterfield, New Orleans, Shirley Martin, Counsel for Respondent.
KIMBALL, Justice.
We granted certiorari to consider whether the Department of Social Services ("the Department") can be held vicariously liable for abuse inflicted by foster parents upon children in the custody of the Department. For the following reasons, we find that when the Department is awarded legal custody of a child, the law imposes upon the Department a duty of care and protection of that child. Further, we find that the Department's custodial duty is non-delegable. Therefore, we conclude that when a child is abused by foster parents, the Department may be held vicariously liable for the abuse.

Facts and Procedural History
Plaintiff, Charlene Miller, is the biological mother of two children, C.V.M., a female, who was born on July 25, 1989, and C.M., a male, who was born on February 9, 1987. On October 23, 1996, Charlene Miller, individually and as the administrator of the estates of her minor children C.V.M. and C.M., filed a petition in district court against Matthew and Shirley Martin[1] and the Department, alleging that these defendants are liable for injuries sustained by her children. Specifically, plaintiff's petition alleges that from August 1994 through July 1996, the Department was given both legal and physical custody of the children by the Jefferson Parish Juvenile Court. During that time, the children were placed in the foster home of the Martins, who are alleged to be the agents and/or employees of the Department. The petition further alleges that during the time period in which the children were in foster care, Matthew Martin sexually abused C.V.M. and physically abused C.M. In addition to alleging the liability of the Martins, plaintiff asserts that the children's injuries were caused by the negligence of the Department, its agents, and employees in failing to properly screen, investigate, train, supervise, and monitor the foster parents, failing to investigate reports of abuse from its foster children, and failing to promulgate policies and procedures to ensure that foster children are not abused by foster parents. *763 Additionally, plaintiff's petition alleges in paragraph 12:
Furthermore, [the Department] is strictly liable and vicariously liable to these plaintiffs for all of their damages resulting from the abuse by a foster parent, as a matter of law.
On January 17, 1997, plaintiff amended her petition to add Methodist Home for Children ("MHC") as an additional defendant. Plaintiff alleged that MHC had a contract with the State of Louisiana to share the responsibility for screening, investigating, approving, and/or supervising the Martins as foster parents. Thus, plaintiff's petition alleged MHC was negligent on the same grounds as those asserted against the Department in the original petition.
On January 4, 2001, plaintiff amended her petition for a second time, substituting the following language for former paragraph 12:
Furthermore, [the Department] and Methodist Home for Children, Inc. are strictly liable and vicariously liable to these plaintiffs for all of their damages resulting from the abuse by a foster parent, as a matter of law, as both entities shared the responsibility for the well-being of the children, who were in the State's custody, in the Martin Home, and served as joint employers and/or supervisors of the Martins.
On March 22, 2001, summary judgment was granted in favor of MHC, dismissing MHC as a defendant in this case.[2]
On September 12, 2001, the Department filed a motion for summary judgment seeking to dismiss plaintiff's strict liability claims. In its motion, the Department argued that the law does not permit the Department to be held strictly liable for alleged acts of foster parents against foster children in the custody of the state. The Department also maintained it is neither the employer nor the principal of the Martins. Plaintiff opposed the motion for summary judgment, relying on Vonner v. State Through Dept. of Public Welfare, 273 So.2d 252 (La.1973), and Cathey v. Bernard, 467 So.2d 9 (La.App. 1 Cir.1985), for the proposition that the Department is vicariously liable for the abuse foster parents inflict upon foster children. After a hearing on the motion, the district court denied the Department's motion for summary judgment based on this court's decision in Vonner.
The court of appeal granted in part the Department's application for supervisory writs, finding that the district court should have granted the motion for summary judgment on the issue of whether the Department can be held strictly liable for the torts of the foster parents. Miller v. Martin, 01-1425 (La.App. 5 Cir. 2/6/02) (unpublished decision). The court of appeal analyzed the language used by the courts in Vonner and Cathey and concluded that those cases suggest that a negligence standard, rather than one of strict liability, applies to the determination of whether the Department is liable in this case. The court of appeal found, however, that because genuine issues of material fact exist regarding the Department's negligence, summary judgment on this issue would be inappropriate.
We granted certiorari upon plaintiff's application to consider the legal issue of whether the Department can be held vicariously liable for abuse inflicted by foster parents upon children in its custody. Miller v. Martin, 02-0670 (La.6/7/02), 818 So.2d 773.

Discussion
Plaintiff assigned one error to this court:

*764 The fifth circuit court of appeal clearly erred as a matter of law in interpreting Vonner v. State as imposing a negligence standard upon [the Department] for [the Department's] liability for damages resulting from sexual and physical abuse of foster children in the legal custody of [the Department] at the hands of foster parents.
Plaintiff argues that under Vonner, the Department is liable for the abuse of foster children in its custody without regard to fault. Plaintiff further maintains that the court of appeal's narrow interpretation of Vonner ignored this court's statement that the Department's liability in that case rested "upon a broader base than negligent compliance with its own regulations for the health and care of the children in its custody."
In response, the Department argues that the court of appeal correctly granted summary judgment dismissing plaintiff's strict liability claim against it. The Department asserts that foster parents are not agents or employees of the Department. Further, the Department contends that Vonner was statutorily overruled by the passage of the Louisiana Children's Code in 1991 and the advent of the Juvenile Court system. The Department argues that its duty is defined in the Children's Code and requires the use of reasonable efforts in providing services to children and their families. According to the Department, this duty, which is based on a reasonableness standard, does not encompass vicarious or strict liability.
Appellate review of the granting of a motion for summary judgment is de novo. Schroeder v. Bd. of Sup'rs of La. State Univ., 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). A court may grant summary judgment that is "dispositive of a particular issue, theory of recovery, cause of action or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case." La. C.C.P. art. 966(E).
In this case, defendant requested summary judgment dismissing plaintiff's strict liability claims on the theory that Louisiana law does not permit the Department to be held strictly or vicariously liable for the intentional torts of foster parents committed against children in its custody. This court, however, has previously interpreted Louisiana law to impose vicarious liability on the Department for abuse inflicted upon children in its custody by foster parents. Vonner v. State Through Dept. of Public Welfare, 273 So.2d 252 (La.1973). Therefore, the specific issue to be addressed in the instant case is whether the legislature has changed the governing statutes such that this interpretation is no longer viable.
In Vonner, a five-year-old child in the legal custody of the Louisiana Department of Public Welfare[3] was beaten to death by his foster mother. Plaintiff, the child's natural mother, sued the foster parents and the Department for the death of her son. The lower courts found the Department was not liable, but this court reversed that determination, holding that the Department was vicariously liable for the *765 tortious acts of the foster parents insofar as they breached the Department's duty to ensure the well-being of children in its custody.
Addressing the liability of the Department, this court initially noted that the Department failed to comply with its own regulations for the health and care of children in its custody. However, this court clearly declined to rest the Department's liability on its negligence in failing to adhere to such regulations, stating that "the Department's liability rests upon a broader base than negligent compliance with its own regulations," and that the scope of the Department's liability is not limited to that fixed by compliance with its own regulations. Vonner, 273 So.2d at 255.
Instead, this court based its decision that the Department was vicariously liable for the foster parents' tortious acts on the fact that Louisiana law imposed a non-delegable duty upon the Department to provide for the well-being of a child in its custody. We began our analysis by looking at the definition of "custody" in former La. R.S. 13:11569(5), which provided that custody "means the control of the actual physical care of the child and includes the right and responsibility to provide for the physical, mental, moral and emotional well-being of the child and all other rights and responsibilities of a parent toward his child except those pertaining to custody." From this definition, we concluded that when the Department is given custody of children, it becomes directly responsible for their care and well-being.
We then recognized that the Department chose to fulfill its custodial responsibility by entering into a foster home contract with the foster parents as authorized by former La. R.S. 46:52(8). That statute permitted the Department to "contract with private individuals to hold their homes open for and to care for children in need of temporary or long time foster care * * *." However, we found that former La. R.S. 46:52(8) did not authorize the Department to divest itself of the responsibilities of custody by such contracts. Therefore, we determined that although the Department contracts with foster parents to care for the children entrusted to its custody, the foster parents fulfill the Department's responsibilities to provide for the well-being of the children and act in its stead. We concluded that the law does not authorize the Department to delegate its legal responsibility to care for children in its custody.
Summarizing our conclusion, we stated: The children of our state are its most precious resource. Those charged with the duty of physical care arising out of the legal custody of a child cannot, on the ground that this duty had been delegated by them to another, evade their civil responsibility for the physical abuse of the child caused by the breach of such duty. Whether the party with legal custody (and thus the ultimate responsibility for the care of the child) chooses to exercise this responsibility of care himself or through an employee, agent, or independent contractor, the ultimate duty of care is non-delegable and remains his legal responsibility.
Id. at 256 (footnote omitted).
Thus, this court held that the Department is vicariously liable for a foster parent's abuse of a child in the Department's custody because the Department's custodial duty to care for and to provide for the well-being of the child is non-delegable. In so holding, we relied primarily upon the definition of custody in former La. R.S. 13:1569(5).[4] At the time Vonner was decided, *766 La. R.S. 13:1569(5) defined "custody" as:
the control of the actual physical care of the child and includes the right and responsibility to provide for the physical, mental, moral and emotional well-being of the child and all other rights and responsibilities of a parent toward his child except those pertaining to property. "Custody," as herein defined, relates to those rights and responsibilities as exercised either by child's parent or parents or by a person or organization granted custody by a court of competent jurisdiction. It shall not exist by virtue of mere physical possession of a child.
By Act No. 726 of 1977, the definition of "legal custody" was added to La. R.S. 13:1569. That Act provided that "legal custody" means:
a legal status created by court order which vests in a custodian the right to have physical custody of the child or minor and to determine, where and with whom he shall live within or without the state, and the right and duty to protect, train, and discipline him and to provide him with food, shelter, education and ordinary medical care, all subject to the powers, right, and duties and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities; provided that when the state of Louisiana is the party to whom custody is given, the state may authorize emergency major medical treatment, if the attending physician certifies the health problem as an emergency medical situation. An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by the court.
The definition of "custody" used by the Vonner court was repealed in 1979 by Act No. 172 of 1978. The definition of "legal custody" remained in La. R.S. 13:1569(11).
Upon the enactment of the Children's Code, La. R.S. 13:1569 was repealed in its entirety by Act No. 235 of 1991, effective January 1, 1992. Today, however, La. Ch.C. art. 116(12) contains a definition of "legal custody" whose source was La. R.S. 13:1569(11). The definition is applicable for the term as used throughout the Children's Code. La. Ch.C. art. 116(12) states:
(12) "Legal custody" means the right to have physical custody of the child and to determine where and with whom the child shall reside; to exercise the rights and duty to protect, train, and discipline the child; the authority to consent to major medical, psychiatric, and surgical treatment; and to provide the child with food, shelter, education, and ordinary medical care, all subject to any residual rights possessed by the child's parents.
In Vonner, this court, relying on the legislative definition of custody, characterized the Department's legal custody of a child as a direct responsibility for that child's care and well-being. Specifically, we stated that the Department had a "legal responsibility that the children be adequately fed, clothed, and protected from intentional physical abuse causing serious injury." Vonner, 273 So.2d at 256. The current definition of "legal custody" charges a custodian with the "duty to protect, train, and discipline the child; ... and to provide the child with food, shelter, education, and ordinary medical care...." The custodial duty in the current legislation to protect, train, and discipline the child, along with the duty to provide the child with food, shelter, education, and ordinary *767 medical care is substantially the same as the custodial duty to provide for the physical, mental, moral and emotional well-being of the child found in former La. R.S. 13:1569(5) as interpreted in Vonner. In essence, the two definitions place the same responsibility or duty upon a custodian. Therefore, we find that when the Department is awarded legal custody of a child by the juvenile court, the law imposes upon the Department the duty of care and protection of the child.
Having determined the custodial duty placed upon the Department, we must now determine whether the legislature intended to change the nature of the duty that this court has previously determined to be non-delegable. In finding the Department's custodial duty non-delegable, the Vonner court considered the provisions of former La. R.S. 46:52(8), which authorized the Department to fulfill its custodial responsibility by entering into a contract with foster parents for the care of children in its custody. We read this provision along with the definition of custody and concluded that although the Department was authorized to form the contract for the care of the children with the foster parents, former La. R.S. 46:52(8) did not allow the Department to divest itself of its custodial responsibility.
The identical provision interpreted in the Vonner decision is now contained in La. R.S. 46:51, which provides the duties of the Department. Subsection (8) of that statute provides that the Department shall administer the public assistance and welfare laws as follows:
(8) Administer and supervise all public child welfare activities relating to children who are dependent, neglected, delinquent, or physically or mentally handicapped; establish, extend, and strengthen services for such children in parish or regional offices; license and supervise all parish, municipal, and private agencies, institutions, and individuals, caring for children, including visitorial powers, under the rules and regulations of the department; contract with private individuals to hold their homes open for and to care for children in need of temporary or long time foster care and provide such other services for children as may be authorized by law.
(emphasis added). Following our decision in Vonner, the legislature moved the provision authorizing the Department to contract with foster parents to care for children to a different section of Title 46, but it did nothing to indicate such contracts allow the Department to delegate its custodial duties to foster parents. We therefore adhere to our interpretation given to this subsection in Vonner that "[t]his statute does not authorize the Department to divest itself of the responsibility of custody by such contracts." Vonner, 273 So.2d at 256.
Underlying the Vonner rationale is the recognition of our state's policy regarding the importance of children. The very purpose of placing children in the state's custody is to protect those children who were not adequately cared for by their natural parents. Thus, once the state obtains custody of a child, the law imposes upon the state the ultimate duty of care. In furtherance of the policy of ensuring the protection of vulnerable children, this court has previously determined that the state cannot delegate its custodial duty to another. When the legislature enacted the definition of "legal custody" in the Children's Code and retained the Department's authorization to contract with foster parents, it evinced no intent to change the law as interpreted in Vonner. Additionally, we find no indication in other portions of the Children's Code or the *768 relevant statutory law that the legislature intended to change the status of the Department's non-delegable custodial duty. We therefore conclude that the Department's custodial duty remained non-delegable upon the passage of the Children's Code.
The theory of non-delegable duties is reflected in § 214 of the Restatement (Second) of Agency, which provides:
A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty.
When the duty of protection is non-delegable, this duty "is not satisfied by using care to delegate its performance to another but is satisfied if, and only if, the person to whom the work of protection is delegated is careful in giving the protection." Comment a, 1 Restatement (Second) of Agency § 214 (1958). Furthermore, in such situations, "a master or other principal may be liable, although without personal fault, for conduct of his agents or servants, whether or not they are acting in scope of employment. In fact, a person who has undertaken a specific piece of work is also liable for the failure of those not his servants or agents to carry out the terms of the undertaking." Id. Noted commentators have explained the basis of the imposition of a non-delegable duty as follows:
It is difficult to suggest any criterion by which the nondelegable character of such duties may be determined, other than the conclusion of the courts that the responsibility is so important to the community that the employer should not be permitted to transfer it to another.
W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 71, at 512 (5th ed.1984).
In cases such as those presented here, we find that once the Department is granted legal custody of children in need of care, its custodial duty to those children is so great that it cannot be delegated to foster parents. While the Department may contract with foster parents to care for children in its custody, it is ultimately responsible for the protection of those children. Thus, if the foster parents fail in their own duty and abuse the children, the Department is vicariously liable for those acts of the foster parents that caused a breach of the Department's custodial duty.
Instead of analyzing the duty imposed on the Department once it receives legal custody of a child, the Department argues that the passage of the Children's Code and the overarching authority of the Juvenile Court system "overruled" the Vonner decision. As explained above, however, the legislature gave no indication it intended to change the non-delegable nature of the Department's custodial duty when it enacted the Children's Code. La. Ch.C. art. 622 authorizes the placement of a child taken into custody as a child in need of care "[i]n foster care under the supervision of the department until further orders of the court." The fact that the Department is charged with the supervision of foster children is not incompatible with its ultimate responsibility to care for and protect children in its custody. In fact, it reinforces the notion that the Department must be vigilant in ensuring that children in its custody are protected. Similarly, the provisions in Title 46 relating to the Department's responsibility to investigate potential foster parents does not indicate a legislative intent to change the nature of the Department's custodial duty.
*769 The Department contends its duty can be found in La. Ch.C. art. 603(17), which defines "reasonable efforts" as "the exercise of ordinary diligence and care by department caseworkers and supervisors...." This definition, however, does not specifically address the duty of the Department owed to children in its custody, and, while it might be construed to impose a duty of reasonableness in some circumstances, it does not serve to invalidate the specific responsibilities incurred by the Department when it obtains legal custody of a child. Finally, the Department contends this court's recent decision in Todd v. State Through Dept. of Social Servs., 96-3090 (La.9/9/97), 699 So.2d 35, compels a contrary result because it looked to the Children's Code to define the duties of the Department without regard to the physical or legal custody issues involved. Todd, however, involved a situation in which the Department did not have legal custody of the child, and, consequently, this court could not look to the definition of legal custody to examine the duties involved.
We recognize that our conclusion herein is contrary to that reached by the courts of other states in similar situations. See e.g., Mitzner v. Kansas Dept. of SRS, 257 Kan. 258, 891 P.2d 435 (1995); Maguire v. State, 254 Mont. 178, 835 P.2d 755 (1992); Simmons v. Robinson, 305 S.C. 428, 409 S.E.2d 381 (1991); Stanley v. State Indus., 267 N.J.Super. 167, 630 A.2d 1188 (1993). But see Stropes v. Heritage House Childrens Ctr., Inc., 547 N.E.2d 244 (Ind.1989). We find, however, that our legislature has determined our policy of protecting children is best furthered by the imposition of a non-delegable duty of care upon the Department once it obtains custody of vulnerable children. Unlike the situation present in some other states, the imposition of a non-delegable duty is not foreign to our law. See Foster v. Destin Trading Corp., 96-0803 (La.5/30/97), 700 So.2d 199 (finding that an owner has a non-delegable duty to maintain a seaworthy vessel); Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978) (finding, prior to the 1996 tort reform amendments, that an owner has a non-delegable duty to keep his building and its appurtenances in repair); Rozell v. Louisiana Animal Breeders Co-op., Inc., 434 So.2d 404 (La.1983) (finding, prior to the 1996 tort reform amendment, that an owner has a non-delegable duty to prevent his animal from injuring others). Additionally, although other jurisdictions analyze and resolve similar issues based on whether the foster parents are employees, agents, or independent contractors of the state, we need not address this distinction since the imposition of a non-delegable duty makes such inquiry irrelevant. See Vonner, 273 So.2d at 256 n. 3.
Our conclusion today that the Department undertakes a non-delegable custodial duty such that it becomes vicariously liable when foster parents intentionally abuse children in its custody is not affected by the role MHC played in placing the children in the Martin's home. According to the Department, the Adoption Assistance and Child Welfare Act of 1980 ("the Act") was enacted to provide reimbursement to States for foster care maintenance and adoption assistance for eligible children. The Department is the agency authorized to administer the federal funds from the Social Security Administration, Title IV-B, that are used to reimburse states for foster care maintenance and adoption assistance pursuant to the Act. As authorized by the Act, the Department licensed MHC as a private "Child Care Facility and Child-Placing Agency" pursuant to La. R.S. 46:1401 et seq. As a licensed agency, MHC contracted with the Department to provide Therapeutic Foster Care training *770 to the Martins.[5] In addition to the foregoing, the Department also asserts that MHC recruited, trained, certified and supervised the Martins as foster care parents according to guidelines provided by the Department and based upon the provisions of the Act. Assuming the Department's statements related to the history between itself and MHC are correct, such an arrangement does not affect the Department's vicarious liability for any abuse inflicted upon the children by the foster parents. If the State can be held vicariously liable for the intentional torts of foster parents, then clearly it cannot relieve itself of this liability merely by contracting with another agency to provide for the placement of children in its custody. In fact, the parties concede as much and do not argue to the contrary.

Conclusion
When the Department obtains legal custody of a child, the law imposes upon it a duty to care for and protect that child. This duty is one of ultimate responsibility for the care of the child and cannot be delegated to others. Thus, when a child is abused by foster parents, the Department can be held vicariously liable for the abuse.
In the instant case, plaintiff's petition alleges the Department is vicariously liable to her and her children for damages resulting from the abuse of her children by a foster parent. We conclude that if it is determined that the children were abused by their foster parent or parents, then the Department may be held vicariously liable in light of its non-delegable custodial duty. For this reason, we reverse the court of appeal's judgment insofar as it grants the Department's motion for summary judgment on the issue of whether vicarious liability is applicable to this case. The judgment of the trial court is reinstated, and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED.
VICTORY, J., dissents and assigns reasons.
WEIMER, J., dissents for the reasons assigned by J. VICTORY.
VICTORY, J., dissenting.
In my view, Vonner v. State Through Dept. of Public Welfare, 273 So.2d 252 (La.1973), was wrongly decided and should be overruled. Therefore, I must dissent from the majority's conclusion, based on Vonner, that when the Department of Social Services obtains custody of an abused child it assumes the "ultimate" and "non-delegable" duty of care for the child. As pointed out by the majority, only a handful of states, when presented with the situation at hand, impose liability without fault on the state. I believe we should join the vast majority of states that hold the state responsible only for its own negligence.
In its opinion the majority is attempting, quite admirably, to protect children of this state who are placed into foster care after being removed from the custody of their abusive biological parents. There can be no doubt that these children deserve to be protected. Nor is there any doubt that the DSS becomes responsible for the well being of those children whom they take into their custody and must carry out this responsibility in a non-negligent manner. However, as defined by Vonner, the duty placed upon DSS amounts to nothing more than the unjustified and unfounded imposition of vicarious liability, i.e., liability without *771 regard to fault, on the DSS for intentional torts committed against foster children.
As correctly pointed out by the majority, the duty assumed by DSS when it obtains legal custody of a child is to "protect, train, and discipline the child." La.Ch.C. art. 116(12). This duty appears to be no different than that of any parent with respect to their children. See La.C.C. arts. 235, 227. However, if the holding of the majority is followed to conclusion, it will impose a burden on the DSS far in excess of that imposed on parents for protection of their children. Assume, for example, that a child's mother and father are divorced and the mother has full custody of the child. Because the mother must work in order to provide for her child she may find herself in the position of having to hire a nanny to take care of the child when she is not home. Because the mother does not want to leave her child in the hands of a dangerous person, she conducts extensive interviews and runs a criminal background check on all applicants. After finding what appears to be the perfect nanny, the mother goes to work so that she can provide for her child. Unfortunately, upon returning home from work the mother finds that the nanny has sexually and physically abused her child. Could then, the child's father, after securing custody of the child, obtain a judgment on behalf of the child against the mother under the theory that the mother is vicariously liable for the torts committed against the child by the nanny?
The answer to the above question is undoubtedly no, but why? Surely the biological mother of a child has a "non-delegable" and "ultimate" duty to protect and provide for her child. The reason is because the tort law of Louisiana does not authorize the imposition of vicarious liability on custodians for torts committed against those in their care. The Civil Code only authorizes the imposition of vicarious liability for the tortious acts committed by those in their custody. See La. C.C. arts. 2317-2320. There is nothing in statute defining the DSS' rights and duties with respect to foster children which indicates the legislature intended to impose a duty of care more stringent than that imposed on parents.
Nor does the relationship between foster parents and the DSS exhibit any of the established characteristics of the employer-employee relationship, which would allow for the imposition of vicarious liability under the theory of respondeat superior. The majority attempts to address this problem by resorting to "non-delegable duty;" however, the fact remains that there is absolutely no legislative authority for imposing on DSS a burden of vicarious liability above and beyond that provided for in the Civil Code.
Finally, I would like to note that plaintiffs in cases such as the one at hand are not without recourse. They may sue DSS for its own negligence, if any, in selecting the foster parents, or for not following DSS regulations as to periodic monitoring of the foster children in question.
NOTES
[1] The petition identifies defendants as Matthew and Shirley "Morton." However, later court documents identify these defendants as Matthew and Shirley "Martin."
[2] This judgment dismissing MHC is now final and is not before this court.
[3] The Louisiana Department of Public Welfare was a predecessor of the Department of Social Services. See La. R.S. 36:478.
[4] La. R.S. 13:1569 contained definitions of terms used in the general provisions of the revised statutes applicable to juvenile courts.
[5] The Department's filings explain that "Therapeutic Foster Care is a contracted program of foster care and treatment services governed by Chapter 6 of the Department's Program Policy Manual, in which a private provider such as Methodist Home, recruits, trains, certifies and supervises the Therapeutic Family Care Foster Parents and case workers."