CARAWAY, J.
| t Plaintiff brings this personal injury claim which resulted from the actions of children whose custody had been the subject of actions by the State of Louisiana, through the Department of Social Services (“DSS”). DSS filed an exception of no cause of action which the trial court denied. The exception placed at issue whether the state agency may be held strictly liable for torts committed by children whose care, at the direction of the DSS, was placed with other parties. This court granted a writ of certiorari; we now reverse, sustain the exception and remand to the district court with instructions.

Facts

The matter was presented below on' an exception of no cause of action, so the facts alleged in the petition are taken as true. In March 2003, Felicia Washington was an employee at a residential facility for “wayward children” between ages 8 and 18, operated by Hope Youth Ranch, Inc. (“Hope”). While Washington was working, two juveniles “became embroiled in a fistic encounter.” Her petition alleges that because of her duties at Hope, she “was required to try and break up” the fight. When she did so, she was pushed backward and allegedly suffered a serious back injury.
Washington sued DSS, alleging that the two youths involved in the fight “had been placed at [Hope] through a foster home program operated by [DSS].” She also alleged the boys “were considered foster *1226 children[1] of \¶,[DSS],” and because of these facts, DSS was liable in tort for her injuries resulting from the boys’ actions. Significantly, Washington’s petition contains no allegation of facts concerning acts or omissions by DSS indicating its negligent involvement in the occurrence.
In response, DSS filed an exception of no cause of action, urging that there is no basis for strict liability for minors’ tortious acts because the agency was neither the parent nor tutor of the children in foster care. Washington opposed the exception, and following a hearing, the trial court overruled DSS’ exception. DSS seeks review of the ruling.

Discussion ■

 The peremptory exception of no cause of action tests the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Knutsen v. Prince, 40,109 (La.App.2d Cir.9/21/05), 911 So.2d 404, (citing Industrial Companies, Inc. v. Durbin, 02-665 (La.1/28/03), 837 So.2d 1207). The exception is triable on the face of the petition and the well-pleaded facts of the petitions must be accepted as true. Knutsen v. Prince, supra; Robertson v. Caddo Parish, La., 36,540 (La.App.2d Cir.12/11/02), 833 So.2d 1139, writ denied, 03-729 (La.4/23/04), 870 So.2d 284. The appellate court conducts a de novo review of a no cause of action exception because the exception raises a question of law and the trial court’s decision is based only on the sufficiency of the petition. Knutsen v. Prince, supra; Robertson v. Caddo Parish, La., supra. When the grounds of the peremptory exception l3of no cause of action may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. La. C.C.P. art. 934. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed. Id.
Notably, the reason for the juveniles’ placement at Hope is not stated in the plaintiffs petition. Presumably, the custody of these minors was placed with Hope by the administrative actions of DSS. La. R.S. 46:51 provides, in part:
The Department of Social Services, through its secretary, shall administer the public assistance and welfare laws of the state, as follows:
* * *
(8) Administer and supervise all public child welfare activities relating to children who are dependent, neglected, delinquent, or physically or mentally handicapped; establish, extend, and strengthen services for such children in parish or regional offices; license and supervise all parish, municipal, and private agencies, institutions, and individuals, caring for children, including visitorial powers, under the rules and regulations of the department; contract with private individuals to hold their homes open for and to care for children in need of temporary or long time foster care and provide such other services for children as may be authorized by law.
We have reviewed various provisions of the Children’s Code under which DSS could have placed these children in the custody of a private agency such as Hope. See La. Ch. C. art. 681 (Title TV, Child in Need of Care); La. Ch. C. art. 779 (Title VII, Families in Need of Services); La. *1227 Ch. C. art. 801, et seq. (Title VIII, Delinquency). These statutes provide three possible sources for custodial placement with a private institution occurring pursuant]^) court order under La. Ch. C. arts. 684, 782 and 897. Under La. Ch. C. art. 683(C), the selection of a private institution is addressed as follows:
(C) If the court commits a child to a private institution or agency, it shall select one that has been licensed under state law, if licensure is required by law for such an institution or agency. When no institution, social agency, or association so licensed for care or placement of children is available to the court, the court may commit the child to some other institution, social agency, or association which in the court’s judgment is suitable for such child.
Further, La. Ch. C. art. 116(12) provides:
(12) “Legal custody” means the right to have physical custody of the child and to determine where and with whom the child shall reside; to exercise the rights and duty to protect, train, and discipline the child; the authority to consent to major medical, psychiatric, and surgical treatment; and to provide the child with food, shelter, education, and ordinary medical care, all subject to any residual rights possessed by the child’s parents.
Washington concedes in her argument the inapplicability of the so-called strict liability of Civil Code Article 2318 for the parents’ responsibility for the acts of their minor children. That strict liability was established by the supreme court in Turner v. Bucher, 308 So.2d 270 (La.1975), upon the following ruling:
We conclude that although a child of tender years may be incapable of committing a legal delict because of his lack of capacity to discern the consequences of his act, nevertheless, if the act of a child would be delictual except for this disability, the parent with whom he resides is legally at fault and, therefore, liable for the damage occasioned by the child’s act. This legal fault is determined without regard to whether the parent could or could not have prevented the act of the child, i.e., without regard to the parent’s negligence. It is legally imposed strict liability.
Id. at 277. Following the pronouncement of this strict liability in Turner, the Louisiana courts of appeal have refused to impose such parental strict | liability upon the state for harm caused by children in state foster care. Opelousas Scrap Materials, Inc. v. State, Div. of Evaluation & Services, Foster Homes Program, 525 So.2d 1144 (La.App. 3d Cir.1988); Gooden v. State, Dep’t. of Health and Human Resources, 546 So.2d 279 (La.App. 3d Cir.1989), writ denied, 551 So.2d 630 (La.1989); Edwards v. Burgess, 96-2064 (La.App. 4th Cir.10/1/97), 700 So.2d 1129; Harris v. Stimac, 99-2070 (La.App. 1st Cir.9/22/00), 768 So.2d 265. Nevertheless, this jurisprudence has allowed examination of the question of the state’s negligence.
Despite the absence of Turner’s strict liability under Article 2318, Washington argues that Civil Code Article 2317 alone applies and suggests that DSS’s liability flows merely from its legal relationship with the foster children “as persons for whom [DSS is] answerable” as addressed under that article. This claim, like the liability of Article 2318, is for strict liability and not for fault based upon negligent acts or omissions.
Prior to 1996,[2] Article 2317, as interpreted by Loescher v. Parr, 324 So.2d 441 *1228 (La.1975) and its progeny, imposed strict liability solely “based upon the relationship, i.e. supervision and control, between the person with custody and the thing posing an unreasonable risk of harm to others.” Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002. Apart from the specific illustrations (or “modifications”) of the principle of Article 2317 found in Articles 2321 and 2322 for the ownership of animals |fiand buildings, respectively, Loescher applied Article 2317 as a stand-alone rule for strict liability for all defective things in one’s custody.
There has been no similar ruling broadly interpreting in the manner now suggested by Washington the additional language of Article 2317 for “persons for whom we are answerable.” The relationships among persons such as parent-child, curator-interdict and employer-employee are the subject of substantive law, and under Articles 2318, 2319, and 2320 may give rise to fault without negligence or strict or vicarious liability in those instances. Given the complex and varying relationships between people, in this case among the state, Hope and these minors, one general rule of legal responsibility in the form of strict liability for all such relationships is not clearly expressed in the language of Article 2317 nor within its intendment. Therefore, in the absence of a specific statute imposing strict or vicarious liability upon a given relationship between persons, such relationship like the one here will be subject to our law governing fault pursuant to Article 2315 and a showing of negligence.
In this case, DSS placed children with Hope for their welfare and that of society, particularly to the extent that acts of delinquency may be involved. We identified above the statutory authority in the Children’s Code under which DSS may have recommended placement of the children with Hope pursuant to dispositional orders of a court. In allowing for that statutory placement scheme, the legislature did not choose to make DSS vicariously liable to third parties injured by the child, and as reviewed above, our general tort law under La. C.C. arts. 2317, et seg., imposes no 17such responsibility. Accordingly, there is no statutory basis for strict or vicarious liability on the part of DSS.
Finally, in reaching this conclusion regarding DSS’s duty vis-a-vis an injured third party, we find the rationale of Miller v. Martin, 02-0670 (La.1/28/03), 838 So.2d 761, inapplicable. Miller pronounced and employed a non-delegable duty of the state for the well-being of children harmed by placement in foster care and found the state vicariously liable for the acts of the foster parents against the child. We hold that DSS is not vicariously or strictly liable for the acts of a foster child and that the only duty owed DSS to an injured third party is the duty of reasonable care for the placement of the child’s custody and supervision in another party.
In summary, we find that it was incumbent upon Williams to allege negligent acts or omissions on the part of DSS as the cause for her injuries. The petition makes no such allegation, and DSS’s exception of no cause of action applies.

Conclusion

For the above reasons, the ruling of the district court is reversed and the exception of no cause of action is sustained. The matter is remanded to allow the plaintiff to attempt within fifteen days to amend her petition to state a cause of action in accor *1229 dance with this opinion. Costs of appeal are assessed to plaintiff.
REVERSED AND REMANDED.

. The petition does not allege the ages of the youths and indicates that youths "between the ages of eight and eighteen” are housed at the facility. Given the petition's description of the youths as "children,” we believe the petition has sufficiently alleged that the youths had not yet reached the age of majority at the time of this incident.

. By the enactment of La. C.C. art. 2317.1 and the addition of the requirement that the custodian of a thing have knowledge or constructive notice of the defect of the thing, the strict liability test for things in one’s custody existing prior to 1996 has been changed to a *1228 negligence standard. Reitzell v. Pecanland Mall Assoc., Ltd., 37,524 (La.App.2d Cir.8/20/03), 852 So.2d 1229.