Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,343-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| BRITTANY NICOLE HOWE, INDIVIDUALLY AND AS NATURAL TUTRIX OF GRAYSON KONRAD, A MINOR | Plaintiff |

versus

| | |
|---|---|
| SAMANTHA GAFFORD AND THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES, STATE OF LOUISIANA | Defendants-Appellees |

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 75561

Honorable Amy Burford McCartney, Judge

* * * * *

| | |
|---|---|
| HARGROVE, SMELLEY & STRICKLAND<br>By: Parker W. Maxwell | Counsel for Appellants,<br>Jason Kunath and<br>Johnna Kunath |
| JEFFREY M. LANDRY<br>Attorney General | Counsel for Appellees,<br>State of Louisiana,<br>Department of Children<br>and Family Services; and<br>Suzy Sonnier, Secretary<br>of Department of<br>Children and Family<br>Services |

FAIRCLOTH MELTON SOBEL & BASH, LLC
By: Barbara Bell Melton
    Special Assistant Attorney General

PETTIETTE, ARMAND, DUNKELMAN,    Counsel for Appellee,
WOODLEY, BYRD & CROMWELL, LLP    Samantha Gafford
By: Larry W. Pettiette, Jr.
    Special Assistant Attorney General

\* \* \* \* \*

Before THOMPSON, ROBINSON, and MARCOTTE, JJ.

MARCOTTE, J.

This appeal arises from the 42nd Judicial District Court, DeSoto Parish, the Honorable Amy Burford McCartney presiding. Plaintiffs, Jason and Johnna Kunath, individually and as natural tutor and tutrix of Grayson Konrad ("plaintiffs" or "appellants"), appeal the trial court's ruling granting summary judgment to defendants, the Louisiana Department of Children and Family Services and Suzy Sonnier, Secretary of the Louisiana Department of Children and Family Services (collectively, "DCFS" or "appellees"), wherein the trial court found as a matter of law that DCFS is not vicariously liable for intentional torts committed by a foster parent because foster parents are not employed by DCFS.

## FACTS

This case involves serious injuries to an infant child, Grayson Konrad ("Grayson"), sustained while in the custody of his foster parent, Samantha Gafford ("Ms. Gafford"). Grayson was born weighing 4 lbs., 6 oz. on February 15, 2013. His biological mother, Brittany Howe ("Ms. Howe"), had a history of significant drug use, including testing positive for amphetamines and barbiturates at the time of Grayson's birth. Ms. Howe's breastmilk tested positive for Xanax, benzodiazepines, and amphetamines. Shortly after his birth, Grayson was adjudicated a "child in need of care," placed in the custody of DCFS, and entrusted to the physical care of Ms. Gafford. Ms. Gafford took Grayson home from the hospital upon his discharge on March 12, 2013.

On May 2, 2013, Grayson presented to the emergency department of Willis-Knighton South Hospital with extensive injuries, including but not limited to the following: (1) subdural hemorrhage; (2) subarachnoid

hemorrhage; (3) intracerebral hemorrhage; (4) retinal hemorrhage; (5) brain contusion; (6) brain edema; (7) coma; (8) altered mental status; (9) seizures; (10) cortical atrophy; (11) anemia; (12) cortical blindness; and (13) ischemic encephalopathy. Upon examination, the hospital staff noticed bite marks on Grayson's stomach and thigh. The physicians treating Grayson at Willis-Knighton and subsequent specialists concluded his injuries were the result of non-accidental head trauma and abuse by his foster parent and reported the findings to law enforcement and DCFS.[1]

Ms. Howe, individually and as natural tutrix of Grayson, filed a petition for damages against Ms. Gafford and DCFS on May 1, 2014, alleging that Ms. Gafford intentionally and negligently caused Grayson's injuries. On September 16, 2015, plaintiffs filed their first amended and supplemental petition for damages against Ms. Gafford, DCFS and Ms. Sonnier, alleging that: (1) DCFS was liable under 42 U.S.C. §§ 1983 and 1988; (2) DCFS was negligent in its hiring, supervising, and training of Ms. Gafford; and (3) DCFS was vicariously liable for Grayson's injuries pursuant to its employment of Ms. Gafford and nondelegable duty as his legal custodian as espoused in the holdings of *Miller v. Martin*, 02-0670 (La. 1/28/03), 838 So. 2d 761, and *Vonner v. State of La. through the Dept. of Public Welfare*, 273 So. 2d 252 (La. 1973).

Grayson was adopted by Jason and Johnna Kunath in March of 2018, and the Kunaths were substituted as plaintiffs in this suit on August 22, 2018. In 2019, plaintiffs' following claims were dismissed by stipulated judgments: (1) their federal claims under 42 U.S.C. §§ 1983 and 1988; and

_____

[1] In a separate criminal proceeding, Ms. Gafford was convicted of cruelty to juveniles arising out of her actions toward Grayson.

2

(2) their state claims related to Ms. Gafford's hiring, training, and supervision, which included DCFS's alleged deficient promulgation and implementation of appropriate policies and procedures to prevent the abuse of foster children by foster parents. As a result, plaintiffs' only cause of action remaining against DCFS was rooted in vicarious liability based exclusively on the alleged intentional acts of Ms. Gafford.

On May 28, 2020, DCFS filed a peremptory exception of no cause of action asserting that, *inter alia*, DCFS cannot be held liable for the actions of a foster parent in light of the limitations on the state's liability set out in La. R.S. 42:1441.1. The trial court denied the exception finding it was bound by *Miller v. Martin, supra*. DCFS sought review and on September 29, 2020, this court declined to exercise its supervisory jurisdiction and denied the writ application of DCFS.

DCFS then sought review with the Louisiana Supreme Court, who granted DCFS's writ application and, on September 30, 2021, issued an opinion affirming the trial court's judgment denying DCFS's exception of no cause of action and remanding the matter for further proceedings. While the Louisiana Supreme Court did not specifically overturn *Miller*, the court cast doubt on that decision and made it clear that La. R.S. 42:1441.1 applies to this case and that DCFS may only be held liable for the actions of Ms. Gafford if she was an employee of DCFS.

On June 14, 2022, DCFS filed a motion for summary judgment alleging that the September 30, 2021, supreme court opinion effectively overturned *Miller*, and that Ms. Gafford was not an employee of DCFS. In support of its claim that Ms. Gafford was not its employee, DCFS submitted an affidavit from Joel Hooper, a Child Welfare Specialist for the Shreveport

3

Home Development Unit of DCFS. Mr. Hooper confirmed in his affidavit that Ms. Gafford, in her capacity as a foster parent, was never employed by DCFS and was never compensated or paid wages in relation to serving as a foster parent. DCFS also pointed out that La. R.S. 46:51(8) expressly provides that the DCFS-foster parent relationship is contractual and does not contemplate employment of the foster parents.

In support of its claim that *Miller* was effectively overturned, DCFS argued that the supreme court's September 30, 2021, decision "unequivocally found that, unless a bad actor is an employee, official, or officer of the state, the state cannot be held vicariously liable for their actions." As such, DCFS argued that the "non-delegable" duty established by *Miller* was effectively overruled and "its judicially-created duty has finally (and properly) been laid to rest as running afoul of La. R.S. 42:1441.1." As a result, DCFS argued that the "law of the case" doctrine dictates that plaintiffs can prevail only if they can establish that Ms. Gafford was an employee of DCFS, which they cannot. Finally, DCFS argued that punitive damages are not recoverable in this case under La. C.C. art. 2315.8, because that article contemplates only the actual abuser being liable for exemplary damages.

Plaintiffs opposed DCFS's motion for summary judgment, claiming that the supreme court's September 30, 2021, opinion did not overturn *Miller* "and the 50 years of jurisprudence on which that decision is based." Plaintiffs argued that until the supreme court specifically states otherwise, *Miller* is binding and cannot be overturned except by the supreme court. Plaintiffs also claimed that La. R.S. 42:1441.1 did not statutorily abrogate *Miller* and *Vonner*, and that the Louisiana Supreme Court in those cases

4

made it clear that the law imposes a nondelegable duty on DCFS to ensure the well-being of children in its custody.

Plaintiffs also argued that the real issue in this case is not vicarious liability under La. R.S. 42:1441.1, but rather DCFS's breach of its nondelegable duty of custodial care. Plaintiffs pointed out the similarities between *Miller* and the facts of this case, and that before the court could opine as to whether Ms. Gafford is an employee of DCFS, it first had to declare *Miller* unconstitutional.

Plaintiffs further argued that even if the court were to declare *Miller* unconstitutional, summary judgment is still improper because genuine issues of material fact exist as to whether Ms. Gafford is an employee of DCFS. Plaintiffs claimed that each of the four primary elements to be considered in determining whether an employer-employee relationship exists – selection and engagement, payment of wages, power of dismissal, and power of control – militate in favor of finding that Ms. Gafford was indeed an employee of DCFS. Plaintiffs also argued that the fact that DCFS is providing a defense and indemnity to Ms. Gafford is further evidence of the employer-employee relationship between the two.

Finally, plaintiffs claimed that punitive damages are available to them pursuant to La. C.C. art. 2315.8(A), which provides for exemplary damages for acts of domestic abuse by family members, and La. R.S. 46:2132(4), which includes both foster parents and foster children in the definition of "family members."

DCFS replied that Exhibits A and C attached to plaintiffs' opposition – interrogatory responses and a foster parent handbook – should be excluded because they were unverified and unauthentic, thus running afoul of the

5

evidentiary requirement of La. C.C.P. art. 966(A)(4). DCFS further argued that, despite plaintiffs' flawed interpretation of the supreme court's September 30, 2021, decision in this case, that ruling made it clear that DCFS is only vicariously liable for those individuals that are employees, officials, or officers of the state. DCFS also pushed back against plaintiffs' characterization of Joel Hooper's affidavit as "self-serving," claiming that it was based on facts, unrefuted, and "definitely lays the employment issue to rest."

DCFS's reply memorandum further argued that plaintiffs' attempt to draw upon *jurisprudence constante* as a basis to deny its summary judgment motion lacks merit because neither *Vonner* nor *Miller* has achieved such status. DCFS also attacked plaintiffs' claim that vicarious liability is not at issue in this case, arguing that the *Miller* court used the phrase "vicarious liability" multiple times to describe DCFS's liability, including in the court's own framing of the issue. Finally, DCFS stated that while it disagreed with plaintiffs' claim that the court had to find *Miller* unconstitutional before determining whether Ms. Gafford was an employee, the court should, regardless, find that *Miller* is unconstitutional because of its infringement upon the legislature's authority and violation of separation of powers.

At a hearing on February 2, 2023, the trial court sustained DCFS's objection to Exhibits A and C and granted its motion for summary judgment, dismissing plaintiffs' claims against DCFS with prejudice and adopting the summary judgment memoranda from DCFS as its written reasons for judgment. This appeal ensued.

## DISCUSSION

Appellants argue that the trial court erred in granting DCFS's motion for summary judgment as a matter of law, since *Miller* and *Vonner* were not overturned by the Louisiana Supreme Court's September 30, 2021, decision in this case. Appellants further argue that La. R.S. 42:1441.1 did not statutorily abrogate *Miller* and *Vonner*, because *Miller* was decided approximately 18 years after the statute's original enactment, and the "legislative findings and purpose" provision for La. R.S. 42:1441.1 does not mention *Vonner*, which was decided approximately 12 years before the statute's enactment.

Plaintiffs also argue that the theory of liability in this case is DCFS's breach of its nondelegable duty of custodial care, not La. R.S. 42:1441.1. Plaintiffs claim that the nondelegable duty of custodial care owed to foster children for the tortious acts of foster parents was established by *Miller* in 2003 and "the relevant laws have not changed" since then.

Plaintiffs also assert that even if *Miller* is declared to be unconstitutional, genuine issues of material fact preclude summary judgment. Plaintiffs claim that an analysis of the four elements to be considered in determining whether an employer-employee relationship exists supports their contention that Ms. Gafford was employed by DCFS. Plaintiffs assert that Ms. Gafford's status as an employee is further evidenced by the fact that DCFS is providing a defense and indemnity to her.

Plaintiffs also argue that the trial court erred in sustaining DCFS's objection to Exhibits A and C attached to their opposition. Plaintiffs acknowledge that their interrogatory responses were not verified and that the

7

Foster Parent Handbook they produced was not authenticated, but claim that "DCFS cannot avail itself of its failure to verify its own responses to interrogatories," especially since DCFS previously filed summary judgment attaching the same unverified interrogatories in support.

Finally, plaintiffs assert that if summary judgment is reversed and the matter is remanded to the trial court for further proceedings against DCFS, then punitive damages are available to them because La. C.C. art. 2315.8(A) provides that exemplary damages may be awarded to a "family or household member" upon proof that their injuries were caused by wanton and reckless acts of domestic abuse.

Appellees argue that the trial court correctly sustained their objection to plaintiffs' exhibits A and C, because those exhibits contained unverified interrogatory responses and an unauthenticated Foster Parent Handbook. Appellees also argue that neither *Miller* nor *Vonner* has been expressly overruled and, thus, the "non-delegable duty" established in those cases is "alive and well." DCFS also argues that the "law of the case" doctrine dictates that plaintiffs cannot prevail if they cannot establish that Ms. Gafford was an employee of DCFS.

DCFS argues that La. R.S. 42:1441.1 did, in fact, statutorily abrogate *Miller* and *Vonner*, and plaintiffs' claim that La. R.S. 42:1441.1 does not apply because DCFS's liability arises "outside" of the "master-servant" relationship must fail. DCFS also claims that while it disagrees with plaintiffs' position that this court must first declare *Miller* unconstitutional before determining whether Ms. Gafford was an employee, *Miller* is unconstitutional regardless. DCFS argues that *Miller* is unconstitutional because it violated the separation of powers and infringed upon the

8

legislature's authority by redefining the state's sovereign immunity waiver and creating a new category of actors for whom the state shall be held vicariously liable.

DCFS also argues that with no evidence to refute Joel Hooper's affidavit, plaintiffs must concede that Ms. Gafford was not its employee. DCFS further claims that each of the four factors considered in deciding whether an employer-employee relationship exists – selection and engagement, payment of wages, power of dismissal, and power of control – support its contention that Ms. Gafford was not its employee. DCFS also argues that providing a litigation defense to Ms. Gafford does not amount to her being an employee for purposes of vicarious liability under La. R.S. 42:1441.1.

Finally, DCFS argues that punitive damages are not recoverable because La. C.C. art. 2315.8 contemplates only the actual abuser being liable for exemplary damages, as evidenced by the inclusion of the phrase "regardless of whether the defendant was prosecuted for his or her acts."

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

9

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

To reverse the trial court's decision, this court would have to find on *de novo* review that the record reveals a genuine issue of material fact which precludes summary judgment as a matter of law. *White v. Louisiana Dep't of Transp. & Dev.*, 18-741 (La. App. 3 Cir. 3/13/19), 269 So. 3d 1031, *writ denied*, 19-0572 (La. 5/28/19), 273 So. 3d 311. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Maggio v. Parker*, 17-1112 (La. 6/27/18), 250 So. 3d 874.

*Ms. Gafford's Employment Status with DCFS*

The supreme court's September 2021, opinion requires plaintiffs to establish that Gafford was "an official, officer or employee of the state," as provided in La. R.S. 42:1441.1, to hold DCFS vicariously liable for Ms. Gafford's alleged actions involving a foster child. It is beyond dispute that

10

Ms. Gafford was neither an official nor officer of the state or any of its agencies at the time of the alleged incident. Thus, plaintiffs had to present competent summary judgment evidence raising a genuine issue of material fact that Ms. Gafford was an employee of DCFS. And as the party seeking to establish an employer-employee relationship, plaintiffs bore the burden of proof on that issue. *Hillman v. Comm-Care, Inc.*, 01-1140 (La. 1/15/02), 805 So. 2d 1157.

Joel Hooper, a Child Welfare Specialist for the Shreveport Region Home Development Unit for DCFS, confirmed by affidavit that Ms. Gafford, in her capacity as a foster parent, was never employed by DCFS and was never compensated or paid wages in relation to serving as a foster parent. Mr. Hooper further stated that Ms. Gafford never received a W-2 tax form from DCFS nor was she entitled to any employment-type benefits such as health insurance. Plaintiffs were unable produce any evidence refuting Mr. Hooper's affidavit.

Moreover, under applicable law, foster parents are not employees of DCFS. La R.S. 46:51(8), the statutory authority allowing DCFS to place children in foster homes, refutes an employer-employee relationship. Specifically, La. R.S. 46:51(8) allows DCFS to ". . . contract with private individuals to hold their homes open for and to care for children in need of temporary or long-time foster care." Thus, the statute expressly provides that the DCFS-foster parent relationship is contractual and does not contemplate employment of these private individuals.

Further, Louisiana courts typically discuss foster parents and "state employees" as distinct groups. *See e.g., Scott v. Brewer*, 31,279 (La. App. 2 Cir. 12/11/98), 722 So. 2d 1186; and *State in Interest of N.C.*, 50,446 (La.

11

App. 2 Cir. 11/18/15), 184 So. 3d 760. Plaintiffs' effort to try and shoehorn the foster care system into an employer-employee situation for the purpose of holding DCFS liable is belied by the general circumstances of the relationship. We agree with Justice Victory's statement in his dissent in *Miller, supra,* that the foster parent-DCFS relationship does not have any of the "established characteristics of the employer-employee relationship, which would allow for the imposition of vicarious liability under the theory of *respondeat superior*." *Id.* at 771.

Summary judgment on a vicarious liability claim "is appropriate when the uncontested facts show that an alleged tortfeasor was not an employee of the defendant." *Lagrange v. Boone*, 21-0560, p. 6 (La. App. 3 Cir. 4/6/22), 337 So. 3d 921, 926, *writ denied*, 22-00738 (La. 6/22/22), 339 So. 3d 1185. We find no genuine issue of material fact that Ms. Gafford, in her capacity as a foster parent, was not an employee of DCFS. Summary judgment is therefore appropriate.

*La. R.S. 42:1441.1 and Vicarious Liability*

Plaintiffs claim that DCFS is vicariously liable for the actions of foster parent Ms. Gafford. However, La. R.S. 42:1441.1 prohibits the application of vicarious liability in this case:

> Civil Code Article 2320 and other laws imposing liability on a master or the offenses and quasi offenses of his servant shall not extend or apply to and shall not impose liability on the state for the offenses and quasi offenses of any person who is not expressly specified by R.S. 13:5108.2(A) to be an official, officer, or employee of the state entitled to indemnification under R.S. 13:5108.2.

12

La. R.S. 13:5108.2 was repealed by 2000 La. Acts. No. 65, § 2, and the substance of the law is now found in La. R.S. 13:5108.1. La. R.S. 13:5108.1 provides as follows:

> The state shall defend and indemnify a covered individual against any claim, demand, suit, complaint, or petition seeking damages filed in any court over alleged negligence or other act by the individual, including any demand under any federal statute when the act that forms the basis of the cause of action took place while the individual was engaged in the performance of the duties of the individual's office, employment with the state, or engaged in the provision of services on behalf of the state or any of its departments pursuant to Paragraph (E)(2) of this Section.

Ms. Gafford is neither a state office holder, employed by the state, nor does she provide the services delineated in paragraph (E)(2), which relates to physicians and dentists who contract with or provide services for the state or any of its departments. Furthermore, a "covered individual" only includes "an official, officer, or employee holding office or employment," none of which apply to Ms. Gafford. *See Morgan v. Laurent*, 06-467 (La. App. 5 Cir. 12/27/06), 948 So. 2d 282, *writ denied*, 07-0178 (La. 3/16/07), 952 So. 2d 701 (holding that "there can be no vicarious liability on the part of the state for the acts of Ms. Laurent because she is not included in R.S. 42:1441.1").

This legislative act – La. R.S. 42:1441.1 – statutorily prohibits DCFS from being held liable, be it vicariously, strictly, or via a judicially created "nondelegable duty," for actions of foster parents merely because the person who performed the alleged act was a foster parent at the time of the alleged incident. Further, La. R.S. 42:1441.1 was passed in direct relation and response to the waiver of sovereign immunity under the Louisiana Constitution. *See Jacobs v. City of Bunkie*, 98-2510 (La. 5/18/99), 737 So. 2d 14, 19 and n. 6 (wherein the supreme court notes that La. R.S. 42:1441.1

was passed in response to the provisions of Article XII, Section 10 "relative to limits of public liability").

Article XII, Section 10 provides that "neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property." However, sub part C of Section 10 provides that "the legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages." La. R.S. 42:1441.1 is one such legislatively created limitation on the state's waiver of sovereign immunity.

La. R.S. 42:1441.1 represents a clear legislative expression that neither the state nor any state agency can be held liable for the actions of another unless such person is an official, officer, or employee of the state – Ms. Gafford was none of these.

Accordingly, plaintiffs' position and the *Miller* court's decision that the state can be liable for the intentional acts of another based upon a nondelegable duty, regardless of the legal bar present in La. R.S. 42:1441.1, is legally incorrect and the Louisiana legislature has expressly stated that "those legislatively created substantive laws which are misinterpreted and misapplied to result in such greater governmental liability can and should be corrected to the same extent and for the same relationships wherein they were erroneously interpreted and applied."

In affirming the trial court's granting of summary judgment in this case, we are not suggesting that DCFS has no responsibility or duty to protect the foster children of Louisiana. To the contrary, that responsibility and duty is set out in a number of places by the legislature, including strict

14

requirements and procedures that must be followed by DCFS before a person can be approved to be a foster parent.  Here, however, it is undisputed that no such claims against DCFS remain that address or attack DCFS's actions in placing Grayson in Ms. Gafford's home or for failing to monitor such placement.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court granting the motion for summary judgment filed by Suzy Sonnier and the Louisiana Department of Children and Family Services.  All costs of this appeal are assessed to appellants.

**AFFIRMED.**

15