THOMAS F. DALEY, Judge.
| j>,The plaintiff, Yvette Morgan, has appealed the summary judgments granted in favor of the Parish of Jefferson and the State of Louisiana. For the reasons that follow, we affirm in part and reverse in part.

FACTS AND PROCEDURAL HISTORY:

Yvette Morgan was allegedly injured when she was struck by a car driven by the defendant, Eve Laurent. Ms. Morgan filed suit against Ms. Laurent and her insurer. In her deposition Ms. Laurent explained that at the time of the accident, she was working as a law clerk for the Second Parish Court of the Parish of Jefferson. She testified that she was working on the construction project for the new courthouse that was being built to house Second Parish Court and at the time of the accident was going to a technology presentation by a company hoping to furnish the technology equipment in the new building. Following this deposition, plaintiff filed a supplemental petition alleging that at the time of the accident, Ms. Laurent was in the course and scope of her employment with the Parish of | ¾Jefferson. The Parish responded with Exceptions of Lack of Procedural Capacity, No Right of Action, and No Cause of Action. In these exceptions, the Parish argued that Second Parish Court is an agency of the State of Louisiana and as a court employee, Ms. Laurent was a state employee. Plaintiff then filed a third supplemental petition adding Second Parish Court, an agency of the state of Louisiana, as a defendant, alleging that at the time of the accident Ms. Laurent was in the course and scope of her employment with the Second Parish Court, an agency of the State of Louisiana. Based on the Parish’s assertion that Ms. Laurent was an employee of the state rather than the Parish, plaintiff dismissed the Parish from the suit without prejudice. The state then moved for summary judgment, claiming Ms. Laurent was an employee of the Parish. Attached to the motion was an affidavit from the payroll officer for the Parish attesting that Ms. Laurent was a part-time employee of the Parish. This prompted the plaintiff to file a fourth supplemental petition adding the Parish as a defendant. The Parish re-urged its Exceptions of Lack of Procedural Capacity, No Right of Action and No Cause of Action. All judges of the Twenty-fourth Judicial District recused themselves stating the Parish was attempting to classify the judicial employees as employees of some entity other than the Parish of Jefferson and they had “an interest in the outcome of that issue”. *284 A retired judge was appointed by the Supreme Court to handle this case.
The exceptions and motion for summary judgment were set for hearing. At the hearing, the trial judge stated that he was “converting” the Parish’s exceptions to a motion for summary judgment. He allowed time for the Parish to file an actual motion for summary judgment, if it so desired and allowed time for the plaintiff to respond to the motion. The trial judge then orally granted the state’s motion for summary judgment. At the conclusion of the hearing, the trial judge ruled that |4Second parish Court is not a juridical entity and it was dismissed on that basis. The trial judge then stated that he “can’t rule on whether or not she’s [Ms. Laurent] a state employee at this juncture” but dismissed the state from this suit because even if Ms. Laurent were found to be a state employee, the state was not responsible for her alleged negligence based on R.S. 42:1441 and R.S. 13:5108.1. The trial judge' rendered two written judgments. In the judgment signed July 18, 2006, the trial judge granted the motion for summary judgment filed by the Parish. In written reasons, the trial judge stated that Second Parish Court is part of the judicial branch of the government of the state of Louisiana and Ms. Laurent’s deposition and the affidavits show there is no issue as to her employer. The trial court concluded her employer was not the Parish of Jefferson. In the judgment signed July 20, 2006, the trial judge ordered Second Parish court be dismissed because it was not a juridical body that can sue or be sued, that Second Parish Court and the State of Louisiana cannot be held vicariously liable for any acts of Ms. Laurent in this matter, and granting the state’s motion for summary judgment. The plaintiff has timely appealed both judgments.

SUMMARY JUDGMENT IN FAVOR OF THE PARISH OF JEFFERSON:

The plaintiff contends that the judgments are .contradictory, arguing that Eve Laurent must be either the employee of the Parish of Jefferson because Second Parish Court is a sub component of the political subdivision the Parish of Jefferson, or she must be the employee of the State of Louisiana because Second Parish Court is part of the Judicial Branch of Government of the State of Louisiana. Plaintiff interprets the judgments to hold that Ms. Laurent is an employee of neither. Plaintiff points out that at all times relevant to this suit, Ms. Laurent was employed as a law clerk to the two judges of Second Parish Court. Plaintiff contends that Issince these judges perform parish functions and have an employer-employee relationship with the parish in which the parish exercises control over their functions, the parish should be held liable for the torts of the judge’s employees. Plaintiff then argues in the alternative that if the Parish is not Ms. Laurent’s employer, then the State must be her employer.
In its motion for summary judgment, the state argued that Ms. Laurent was not an employee of the state and therefore the state cannot be held liable for her negligence. Attached to the motion is an affidavit from Geralyn Savoie, the payroll officer for the Parish of Jefferson, who attests that Ms. Laurent is a part-time employee of the Parish. Ms. Savoie explained that due to her part-time status, Ms. Laurent is not a part of the parish retirement system but contributes to a voluntary deferred compensation plan sponsored by the Parish.
The Parish takes the position that Second Parish Court is part of the judicial branch of state government. The Parish argues that all employees of courts provided for in Article V of the constitution are *285 unclassified state employees under Article X § 2(B) of the Constitution.[1] Attached to the Parish’s opposition to the state’s motion were affidavits from the Personnel Director and the Finance Director of the Parish. The Personnel Director, Martin Schwegmann, attests that Ms. Laurent is not a classified employee of the Parish and does not meet the enumerated list of unclassified employees of the Parish, therefore she is not a Parish employee. The Finance Director, Nancy Cassagne, attests that she is the supervisor of Ms. Savoie, who previously provided an affidavit stating Ms. Laurent was a part-time parish employee. Ms. Cassagne attests that Ms. Savoie was incorrect and that Ms. Laurent is not a parish employee.
| (Appellate courts review summary judgments de novo using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Reynolds v. Select Properties Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180. Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The movant bears the burden of proof. La.Code Civ.P. art. 966(C)(2).
The state presented the affidavit of Ms. Savoie attesting that Ms. Laurent was a part-time employee of the Parish, while the Parish presented the affidavit of Ms. Cassagne attesting that Ms. Savoie was wrong and Ms. Laurent was not an employee of the Parish. Given the conflicting affidavits, we find the trial court erred in granting summary judgment in favor of the Parish holding that Ms. Laurent was not an employee of the Parish.

SUMMARY JUDGMENT IN FAVOR OF THE STATE:

In its Motion for Summary Judgment, the state argues that LSA-R.S. 42:1441.1 provides that the state is not liable for the offenses of any person who is not expressly specified by LSA-R.S. 13:5108.2. The state notes that the list of specified employees for which the state may be held vicariously liable is now found in LSA-R.S. 13:5108.1 since LSA-R.S. 13:5108.2 has been repealed. LSA-R.S. 13:5108.1(E)(l)(c) lists covered individuals of the judicial branch for whom vicarious liability is extended stating:
In the state supreme court or in the office of the clerk thereof or office of judicial administrator thereof, in one of the circuit courts of appeal or in the office of clerk there of, or in any of the family, juvenile, or judicial district courts of the state or in the offices of the judicial administrators thereof.
|7The state contends that even if Ms. Laurent was to be found a state employee, there could be no vicarious liability for her actions since she is not one of the enumerated employees. We agree. The summary judgment rendered in favor of the State of Louisiana is affirmed. There can be no vicarious liability on the part of the state for the acts of Ms. Laurent because she is not included in R.S. 42:1441.1.

IS SECOND PARISH COURT A JURIDICAL PERSON?

In its Motion for Summary Judgment the state submits that Second Parish *286 Court is not a juridical person that can sue or be sued. In support of this position, the state points to Louisiana Civil Code Article 24, which provides that “a juridical person is an entity to which the law attributes a personality, such as a partnership or corporation.” The state contends that Second Parish Court is not a corporation, partnership or any other type of legal entity that would make it a juridical person capable of suing and being sued. The state contends that given the framework of the creation of Second Parish Court, there is no grant of power to institute a lawsuit on its own motion. The state concludes that as a matter of law, Second Parish Court must be dismissed from this lawsuit.
In Roberts v. Sewerage and Water Bd. of New Orleans, 92-2048 (La.3/21/94) 634 So.2d 341, 346, the Louisiana Supreme Court addressed the legal capacity of a governmental entity and held:
The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it|sthe legal capacity to function independently and not just as the agency or division of another governmental entity, (citations omitted)
Roberts thus instructs that in order to determine if Second Parish Court is a separate governmental unit we must review “the particular purpose at issue”. The purpose here is to determine vicarious liability under master-servant/respondent superior tort theory for a judicial law clerk.
LSA-R.S. 42:1441.3, entitled “Determination of master of officer of political subdivision for purposes of Civil Code Article 2320 and other master-servant tort liability laws”, states in pertinent part:
A. The master of an individual who is an ... employee of a political subdivision, under the meaning and purpose of Civil Code Article 2320 and other laws imposing liability on a master for offenses and quasi offenses of his servant, is the particular political subdivision of which such individual is a ... employee.
C. Determinants of which political subdivision may be liable as master for the offenses and quasi offense of a public employee of a political subdivision under Civil Code Article 2320 and other laws imposing such master-servant liability and for finding an employer-employee relationship, shall include all of the following:
a. The public officer or governmental body that exercises the power of selection and engagement of the public employee.
b. The public officer or governmental body politic that supervises or has the right to control closely the daily time and physical activities of such public employee in carrying out his public duties.
c. The public officer or governmental body politic that exercises the power of disciplinary actions and dismissal of the public employee.
d. The source of the funds used for the payment of salaries or wages of the public employee.
E. As provided in R.S. 42:62, the term “political subdivision” means a par *287 ish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions; in addition, for the purposes of this Part, mayor’s courts, justice of the peace courts, district attorneys, sheriffs, clerks of court, coroners, tax assessors, registrars of voters, and all other elected parochial officials shall be separate political subdivisions.
| flThis statute, which was enacted to ensure that a public officer of a political subdivision who hires, controls and supervises the employment of an employee of the said public officer is responsible for the actions of the employee, gives us four objective criteria to determine when political subdivisions may be held vicariously liable. Subsection E suggests courts are separate political subdivisions for the purpose of determining master-servant liability.[2] Applying the four factors set forth above to the case at bar, we look to the authority of the judges of Second Parish Court granted by R.S. 13:2562.22. This statute gives the Judges of Second Parish Court, acting en banc, the authority to hire, supervise, control the daily activities of, and fire Ms. Laurent.
The clear meaning of R.S. 42:1441, 42:1441.1, 42:1441.2, and 42:1441.3 is to restrict master-servant liability to traditional boundaries of control and economic benefit. These statutes attempt “to establish a comprehensive theory of vicarious liability for the torts of local officials and those who work for them.”[3] The statutes were adopted in response to a series of controversial Louisiana Supreme Court decisions which, “held that the state, rather than any local governmental unit, was the entity responsible for the tort of a city clerk, a deputy sheriff, a constable and a parish coroner.”[4] LSA-R.S. 42:1441.3 C directs the political subdivision that hires, supervises, disciplines, and fund the salary of an employee will be considered the employees master.[5] Subsection E defines “political subdivision” for the purpose of master-servant tort liability. The language of Subsection E allows for the | ^compartmentalizing of parochial officials and offices within governmental entities. Appellant’s argument that Ms. Laurent can only be an employee or servant of the State or Parish ignores the clear import of LSA-R.S. 42:1441.3 E, which provides that a political subdivision (at least for master-servant tort criteria) will be divided into functional governmental units and will not be limited to Parish or Municipal units.
■ While we recognize that nothing in the statutes creating and governing the operation of Second Parish Court specifically state it is a juridical entity, we note that R.S. 13:2562.22 creates ,a judicial expense fund over which the court has jurisdiction *288 and gives the judges of the court control over this fund and disbursements made from this fund. This statute further gives the judges authority to appoint court reporters, secretarial, clerical, research, administrative, and other personnel that the judges deem necessary to conduct the business of the court. The judges have the authority to fix the salaries of such personnel which are paid from the monies in the judicial expense fund. The fund is also available to purchase equipment for the court. The general function of the expense fund is to be used for any purpose connected with, incidental to, or related to the proper function of the court and the judges. Our reading of the statutes creating and organizing Second Parish Court indicates that the court functions independently over the criminal and civil matters over which it has jurisdiction. Further, it generates funds for its own operating expenses. Thus, using the factors set forth in Roberts, supra, we find in master-servant liability matters Second Parish Court for the Parish of Jefferson is a juridical entity and as such can be named as a defendant in this lawsuit.[6] In Accordingly, the portion of the trial court judgment finding Second Parish Court not to be a juridical entity is reversed.
This conclusion is supported by the Third Circuit opinion Johnson v. City of Pineville, 2005-1054 (La.App. 3 Cir. 3/1/06), 924 So.2d 443, wherein a former employee of the city court’s clerk’s office brought suit against the city, the clerk of court, and the city court for damages arising from her discharge. The Third Circuit held that determination of whether a political subdivision is the master of a public employee for the purposes of vicarious liability is to be determined by looking at the statutory factors enumerated in R.S. 42:1441.3. The Court granted the city’s Exception of No Cause of Action because the pleading did not allege that the City of Pineville exercised any of the four control factors identified in LSA-R.S. 42:1441.3 C(l — 4). The court did allow the employee an opportunity to amend the petition in an attempt to state a cause of action imposing vicarious liability on the city court, part of the city government, but presumptively a separate political subdivision for master-servant tort recovery from the Clerk and City Court.

CONCLUSION:

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of the Parish of Jefferson is reversed. The judgment of the trial court dismissing Second Parish Court from this lawsuit is reversed. The judgment of the trial court granting summary judgment in favor of the State of Louisiana is affirmed.

AFFIRMED IN PART; REVERSED IN PART.

. LSAConst. Art. X § 2 deals with Civil Service Classification both State and City and does not directly answer the legal question of who the master of judicial law clerks are. Article X § 2(B) does state that all offices provided for in Article V are unclassified, but Jefferson Second Parish Court is not mentioned in Article V of the Louisiana Constitution.

. See LSA-R.S. 42:1441.3 E, which specifically identifies mayor's courts and justice of the peace courts as separate political subdivisions for the purpose of master-servant determination. Parish courts are not specifically identified, but is an "other unit of local government ... authorized by law to perform governmental functions" and as such can operate as a separate political subdivision under the language of Subsection E.

. See Kenneth M. Murchison, Local Government Law, 46 La.L.Rev. 491, 523 (Jan.1986) (commenting that, "the Legislative solution seems consistent with effective risk management because it transfers liability to the local official with the ability to control.”).

. See David W. Robertson, Tort Liability, of Governmental Units in Louisiana, 64 Tul.L.Rev. 857, 873 (March 1990)

. LSA-R.S. 42:1441.3 B sets forth a criteria for determining the master of an elected or appointed official. The criteria focuses on territorial issues and differs substantially from the factors in subsection C, which sets forth criteria for employees.

. There has been at least one other instance in which a court in this circuit has been a defendant in a lawsuit. Beevers v. Jefferson Parish Juvenile Court, 552 So.2d 1317, (La.App. 5th Cir. 1989).